939 A.2d 472 (2007)
2007 VT 95
Danny L. DeGRAFF, Nancy R. DeGraff and MBS Hardware & Lumber, Inc. d/b/a Milton Hardware Supply
v.
Norman BURNETT.
No. 06-266.
Supreme Court of Vermont.
August 31, 2007.
*474 Richard W. Norton, J.
William B. Towle of Ward & Babb, South Burlington, for Plaintiffs-Appellants/Counterclaim Defendants-Appellants.
Eric G. Parker of Bauer, Gravel, Farnham, Nuovo, Parker & Lang, Burlington, for Defendant-Appellee.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
DOOLEY, J.
¶ 1. Plaintiffs Danny L. DeGraff, Nancy R. Degraff, and MBS Hardware & Lumber, Inc., appeal from the trial court's order in this quiet-title action. The court determined that, pursuant to the terms of their deed, plaintiffs possessed a twenty-seven-foot-wide triangular easement on land owned by defendant Norman Burnett, which they could use for garage space and storage of lumber. Plaintiffs argue that the trial court erred in: (1) interpreting their deed; (2) denying their claim for damages; and (3) denying their request for a jury trial. We affirm.
¶ 2. Plaintiffs and defendant own adjoining commercial lots in Milton, Vermont. Plaintiffs purchased their lot, Lot 5, in 1990 from William and Lois Warren. Lot 5 has westerly frontage on Route 7, and easterly frontage on Town Highway 47 (TH 47). It is about twice as long as it is wide, and it is shaped "like a rectangle that has been bent against someone's knee." Plaintiffs operate Milton Building Supply, a lumber and hardware business, on their lot, as did the Warrens before 1990.
¶ 3. Plaintiffs' deed contained two express easements. The first, at issue in this appeal, burdened an adjacent lot, Lot 3, then owned by the Warrens and now owned by defendant. The deed specifically provided:
The property herein conveyed has the benefit of an easement across the northerly *475 boundary of Lot 3 as depicted on said plan, for the purpose of storing lumber and garage space for the lumber business located on Lot 5. This easement is 27 feet in width at its widest point, extending southerly from the southeasterly corner of Lot 5. The easement area follows an existing fence line.
Plaintiffs were also granted a right of "ingress and egress" across the northern boundary of Lot 7, another adjacent lot owned by the Warrens.
¶ 4. In 2002, Mr. Warren deeded Lot 3 to defendant. The deed is expressly subject to plaintiffs' easement and provides that "[n]o warranty is made that the size and exact location of said easement are as shown on any survey plans." Lot 3 is shaped "like a square with a tail." It fronts TH 47 on the east, Lot 5 on the north, and Lot 7 on the west. Lot 3 does not extend to Route 7, and it is only half as long as Lot 5.
¶ 5. At about the time that defendant took possession of Lot 3 in 2002, plaintiffs made improvements to the easement property. They built up the easement path with gravel to accommodate large delivery trucks, extended the existing fence line, and put a gate at the entrance to TH 47. Shortly thereafter, defendant removed the gate, the gravel, and the fence. Plaintiffs then filed a quiet-title action and a claim for damages, seeking to clarify the boundaries of their easement, receive compensation for the destruction of their improvements, and resume their asserted use of the easement as an access point for trucks delivering lumber and other merchandise.
¶ 6. In October 2002, defendant moved for partial summary judgment, arguing that plaintiffs' deed was unambiguous in its description of two sides of the easement area and in its description of the allowed use. He asked the court to exclude any extrinsic evidence offered by plaintiffs on these issues. Plaintiffs opposed the motion, and filed a cross-motion for summary judgment on all issues. They asserted that the "fence line" referenced in the deed was sixty-five feet from the southeast corner of Lot 5, not twenty-seven feet as set forth in the deed. According to plaintiffs, they were entitled to the wider easement despite the reference to the twenty-seven-foot width because the fence line, as a monument, controlled over the metes-and-bounds description as a matter of law. Plaintiffs also argued that their easement necessarily included a right of ingress and egress from TH 47.
¶ 7. In an April 2003 order, Judge Dennis Pearson denied both motions. He found defendant's motion inadequately supported and concluded, as to plaintiffs' request, that extrinsic evidence would be needed to resolve ambiguities in the deed as to both the allowed use and the location of the easement. As to allowed use, the court rejected plaintiffs' assertion that they necessarily possessed a right of ingress and egress, explaining that no such right was conveyed by the deed. Rather, the deed plainly stated that the easement was to be used for "storing lumber and garage space." The court found it apparent that Mr. Warren knew how to use appropriate language when he intended to convey a right of access, and it also noted that plaintiffs had access from TH 47 to the storage area across their own property.
¶ 8. As to location, the court found that the only descriptions of the easement in the deed that had any precision were that: (1) its widest point was twenty-seven feet measured "southerly" from the "southeasterly corner of Lot 5," a corner that could be located, and that (2) it "follows an existing fence line." While plaintiffs argued that the easement, as described, abutted and had as its actual southerly boundary *476 the existing fence line, the court found that this boundary would make the easement area approximately sixty-five feet wide at the edge of TH 47 (where the southeasterly corner of Lot 5 was located), which was clearly contrary to and inconsistent with the express deed language. Defendant, on the other hand, argued that the easement was twenty-seven feet at its widest point, as described in the deed, and its southerly boundary ran from that point parallel to the fence line.
¶ 9. The court found both interpretations plausible given the imprecise phrase, "follows an existing fence line." Moreover, the court explained, because defendant's preferred construction would harmonize both the express terms of the deed, and the existing "monument" on the ground, there was arguably no conflict to trigger the rule strongly urged by plaintiffs, that "in [any] conflict between courses and distances, and known boundaries and monuments, courses and distances must yield." In any event, the court concluded, disputed issues of material fact precluded entry of judgment in plaintiffs' favor.
¶ 10. After a three-day trial before Judge Richard Norton, the court issued its final order, which relied upon and partially incorporated Judge Pearson's order denying summary judgment. The court explained that, in light of the earlier finding of ambiguity, it had taken extrinsic evidence to establish the easement with precision, including the circumstances surrounding contract formation as well as hearsay statements from the grantor regarding the easement's boundaries.[1] It ultimately adopted defendant's proposed construction of the deed.
¶ 11. In reaching its conclusion, the court was unpersuaded by the extrinsic evidence offered by plaintiffs. Plaintiff Danny DeGraff testified, for example, that Mr. Warren promised to convey him an easement up to the fence line, and that plaintiffs had been using the area up to the fence line since 1990. Nonetheless, the court explained, the deed plainly provided that the easement was twenty-seven feet at its widest point, extending southerly from the southeasterly corner of Lot 5, and neither Mr. DeGraff nor Mr. Warren's former wife, Lois Strong, could explain why or how the explicit twenty-seven-foot measurement was inserted into the deed.
¶ 12. While a 1998 survey map depicted plaintiffs' easement as extending sixty-five-feet at its base, the map contained a disclaimer indicating that it depicted the easement as it appeared on the ground in 1998 when plaintiffs were admittedly occupying the entire area in question. Given this, as well as the surveyor's testimony that his map was not conclusive on the width of the easement, the court found that the survey map did not represent what the easement should be under the terms of the deed.
¶ 13. In contrast, the court found that defendant produced evidence to credibly support his assertion that Mr. Warren told him that the sixty-five-foot easement boundary depicted on the 1998 survey map encroached onto Lot 3. Defendant testified to this effect. An individual named Steve Jangraw also testified that he looked at Lot 3 in 2001 with defendant and Mr. Warren. He stated that Mr. Warren told them that the existing fence was not a boundary line but rather, plaintiffs' easement ran twenty-seven feet south from a pin near a mailbox on the road, and this measurement was reflected in plaintiffs' *477 deed. The court found Mr. Jangraw persuasive and credible, and it adopted his testimony as factual.
¶ 14. The court also credited the testimony of David Bowers, an individual who had extensive experience with maps and surveying. Mr. Bowers testified that he laid out the easement's boundaries, starting from a pin that marked the southeast corner of Lot 5, proceeding twenty-seven feet southerly, and then proceeding along the existing fence line approximately ninety feet. The court found Mr. Bowers' testimony compelling and his findings conclusive on the measure and nature of the easement.
¶ 15. In light of this and other evidence supporting the twenty-seven-foot measurement, the court concluded that the phrase "follows an existing fence line" in the deed must mean "to run besides"  follow along  to a point logically narrower than the fence line. The court found that this interpretation harmonized all of the deed's terms  a preferred construction  and it was uncontradicted by any evidence offered by Mr. DeGraff. Rather than reading out the twenty-seven-foot language, as plaintiffs suggested, the court found that the evidence showed that Mr. Warren understood the easement to extend only that far. In reaching its conclusion, the court found Mr. DeGraff's testimony entitled to less weight than that of other witnesses because it was essentially self-serving. The court also found Mr. Warren's hearsay statement more credible in that it explained the existence of the twenty-seven-foot language in plaintiffs' deed.
¶ 16. The court thus concluded that the easement area was that described by Mr. Bowers above  a triangular area, twenty-seven feet at its base, that followed a line parallel to the fence line, which was consistent with the deed language. In this respect, the court explained, it accepted Mr. DeGraff's argument that the fence line was a monument in the deed. But, the court concluded, the monument marked the direction of the easement rather than its boundary. Therefore, it did not control over the clear metes-and-bounds description but rather informed the direction of that distance.
¶ 17. As to the allowable use of the easement, the court explained that the DeGraffs had presented evidence of their current and previous use of the easement as essentially a commercial driveway and storage area, but they offered no other evidence that would clarify the meaning of the language in their deed and the intent of the parties. The court found plaintiffs' mixed use inconsistent with the language of the deed, which gave them only a right to store lumber and use the easement for garage services. None of the evidence offered supported use of this easement as an ingress/egress or otherwise as an access point to the rear of Lot 5. Thus, because such use was unsupported by either the language of the deed or the evidence of its meaning, the court concluded that it could not be continued. The court also rejected plaintiffs' claim for damages arising from the loss of the gate or any structures on the encroached area. This appeal followed.
¶ 18. Plaintiffs argue that the court erred in interpreting the terms of their deed. They first assert that the deed is unambiguous and that no extrinsic evidence was required to ascertain the parties' intent. According to plaintiffs, the phrase "follows an existing fence line" can mean only that the fence line itself is the boundary, and any discrepancy between the twenty-seven-foot measurement and the fence line must be resolved in favor of the fence line as a matter of law. Assuming that ambiguity does exist, plaintiffs argue that the court erred by looking beyond *478 the parties' intent at the time of conveyance and engaging in a "general survey" of the situation. They also assert that the court committed reversible error by excluding certain evidence relevant to the parties' intent.
¶ 19. We find no error. As discussed below, we conclude that the trial court properly considered extrinsic evidence to resolve ambiguities in the deed, and its findings regarding the parties' intent are supported by the record.
¶ 20. Our master rule in construing a deed is that "the intent of the parties governs." Main St. Landing, LLC v. Lake St. Ass'n, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.) (citation omitted). In ascertaining intent, we must "consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." Id. A deed term is ambiguous if "reasonable people could differ as to its interpretation." Trs. of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc., 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). If a writing is unambiguous under this standard, we must enforce the terms as written "without resort to rules of construction or extrinsic evidence." Main St. Landing, LLC, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931. If ambiguity exists, however, the "interpretation of the parties' intent becomes a question of fact to be determined based on all of the evidence  not only the language of the written instrument, but also evidence concerning its subject matter, its purpose at the time it was executed, and the situation of the parties." Id. (citation omitted).
¶ 21. We begin with the easement's location. The deed provides that the easement "is 27 feet in width at its widest point, extending southerly from the southeasterly corner of Lot 5. The easement area follows an existing fence line." As the trial court found, this description is ambiguous. See id. (Supreme Court reviews finding of ambiguity de novo). It could be read to mean that the easement area extended to the fence line itself, although this would contradict an express term in the deed. It could also mean that the easement extended twenty-seven feet from the southwest corner and then ran in a line parallel to the fence line. Plaintiffs rely heavily on dictionary definitions of the term "follows," yet in the context of the writing above, the phrase "follows an existing fence line" is imprecise and capable of more than one reasonable meaning.
¶ 22. Given that the deed's reference to an alleged monument was itself ambiguous, the rule of construction urged by plaintiffs does not control the interpretation of the deed's terms. Cf. Marshall v. Bruce, 149 Vt. 351, 352, 543 A.2d 263, 264 (1988) (rule of construction that monuments referred to in the grant description control over courses and distances because it is more likely that there would be a mistake or misunderstanding about the course or distance than about the boundary or monument). Indeed, as the trial court noted in its initial ruling, the two references do not necessarily conflict, and they can in fact be harmonized.
¶ 23. Because the deed was ambiguous, the court properly considered extrinsic evidence to discern the parties' intent. See Kipp v. Chips Estate, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999); see also 14 R. Powell, Powell on Real Property § 81A.05[3][e], at 81A-102 (M. Wolf ed.2000) (explaining that extrinsic evidence may be introduced to explain or clarify an ambiguous written description but may not be used to contradict the written description). As reflected above, the court found that although plaintiffs asserted that the grantor actually intended to convey them *479 an easement up to the fence line, they could not explain why or how the twenty-seven-foot measurement was included in the deed. Defendant, on the other hand, presented evidence, which the court found credible, that Mr. Warren intended to convey an easement twenty-seven-feet wide at its base, which was consistent with the language of the deed. The court was not obligated to accept the evidence offered by plaintiffs regarding the parties' intent.
¶ 24. Plaintiffs assert that the court should not have considered evidence that did not directly relate to the intent of the grantors at the time of the conveyance to plaintiffs. In fact, defendant's evidence did go to the intent of Mr. Warren with respect to the property interest conveyed to plaintiffs. Moreover, our rule is that when the court finds a deed provision ambiguous, "the proper interpretation becomes a question of fact, to be determined on all relevant evidence." Kipp, 169 Vt. at 107, 732 A.2d at 131. The evidence was relevant to show Mr. Warren's intent. It was admissible under a specific exception to the hearsay rule. See V.R.E. 804(b)(4)(C) (out-of-court statements from unavailable witness as to boundaries of land admissible as exception to hearsay rule). The weight to be accorded the evidence must be determined by the trial court, not this Court.
¶ 25. Based on the evidence presented, the court's conclusion that the phrase "follows the existing fence line" must mean "running in a line parallel to" was sound. The interpretation was based on evidence in the record regarding intent, consistent with the language of the deed, and it harmonized all of the deed's terms. See Main St. Landing, LLC, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (In determining intent, we "must consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible."); see also Somon v. Murphy Fabrication & Erection Co., 160 W.Va. 84, 232 S.E.2d 524, 527 (1977) ("Calls, if they can be applied and harmonized in any reasonable manner in determining boundaries of a tract of land cannot be disregarded and as few calls or descriptions should be disregarded as is possible." (citations omitted)). While plaintiffs argue that the "clear intent" of the deed was to convey an easement to the fence line, the court found otherwise and its decision is supported by the record. See Mullin v. Phelps, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994) (Supreme Court will not disturb the trial court's factual findings unless they are clearly erroneous, meaning there is no credible evidence in the record to support them). We will not reweigh the evidence on appeal. The court did not err in determining the easement's location.[2]
¶ 26. Turning to the allowed use, we reject plaintiffs' contention that a right of ingress and egress was "implicit and consistent with" the intended use of their easement. The permissible extent of the use of the easement must be determined from the language in the deed. See Edwards v. Fugere, 130 Vt. 157, 163, 287 A.2d 582, 587 (1972); see also 4 R. Powell, *480 Powell on Real Property § 34.12, at 34-134 to 34-135. The language used in this particular portion of the deed is unambiguous, and it plainly does not include the right of ingress and egress. Looking at the deed as a whole, it is clear that the grantor knew how to use these specific terms when he intended to convey such a right. The trial court properly enforced the plain language of the parties' agreement. See Kipp, 169 Vt. at 107, 732 A.2d at 131 ("[W]hen looking at particular language in a deed, the court must accept the plain meaning of the language and not look to construction aids if the language is not ambiguous.").
¶ 27. Next, we consider and reject plaintiffs' contention that we should reverse the court's judgment because it improperly excluded part of plaintiffs' evidence on the intent of their grantors in conveying the easement. According to plaintiffs, the court erroneously excluded relevant testimony regarding intent from Mr. DeGraff, Ms. Strong, attorney Roger Kohn, and Mr. Bowers, based on its mistaken belief that the testimony was inadmissible because of the doctrine of merger. Regardless of whether the court's theory of merger was correct, plaintiffs fail to demonstrate that they suffered any harm from the exclusion of this evidence. See V.R.C.P. 61 (Court will disregard errors that do not affect parties' substantial rights).
¶ 28. As we have noted, Rule 61 "requires examination of just how the court's ruling affected the rights of the plaintiffs, not merely procedurally, but in matters truly of substance." Ordinetz v. Springfield Family Ctr., Inc., 142 Vt. 466, 470, 457 A.2d 282, 284 (1983). The record shows that, despite the rulings that plaintiffs identify, all of the witnesses plaintiffs mention testified to the intent underlying plaintiffs' deed. The court was unpersuaded by this evidence, finding that plaintiffs failed to explain why the grantors had included a specific twenty-seven-foot measurement in the deed. It is difficult to see how any additional evidence on this issue would have led to a different outcome. Nonetheless, we briefly address plaintiffs' specific claims of evidentiary error.
¶ 29. The record shows that when Mr. DeGraff started to explain why Mr. Warren might have intended to grant a wider easement  one that would allow plaintiffs access to the storage area from TH 47 through defendant's property  defendant objected, and the objection was sustained. Mr. DeGraff later explained, without using the word "intention," how Mr. Warren had used this access point in the past and why allowing such highway access made sense for the lumber operation on Lot 5. In light of this testimony, as well as Mr. DeGraff's additional statements regarding intent, any error in the court's ruling was harmless.
¶ 30. Ms. Strong testified that she and Mr. Warren intended to convey plaintiffs an easement "[r]ight up to the fence line." As with Mr. DeGraff, when Ms. Strong was asked about the purpose of the easement, the court sustained defendant's objection, finding that the purpose of the easement was unambiguously and specifically stated in the deed. The court did not commit reversible error in so ruling. See Kipp, 169 Vt. at 107, 732 A.2d at 131 (extrinsic evidence may not be used to vary the terms of an unambiguous writing).
¶ 31. Roger Kohn, the attorney who drafted plaintiffs' 1990 deed for Mr. Warren, also testified. Although the trial court indicated that it was going to exclude testimony from Mr. Kohn regarding the parties' intentions, it did allow him to testify to any statements Mr. Warren may *481 have made about the easement's boundaries. See V.R.E. 804(b)(4)(C) (out-of-court statements from unavailable witness as to boundaries of land admissible as exception to hearsay rule). Mr. Kohn subsequently stated that Mr. Warren told him "that it was his understanding that the intention [of] the easement was that it go to the fence line and that . . . where [the surveyor Harold] had put it was the correct location, but that the language in the deed differed from what was shown on the survey." Given this testimony, we fail to see how plaintiffs were harmed by the court's initial ruling. The exclusion of Mr. Bowers' testimony, cited by plaintiffs, was equally harmless.
¶ 32. We similarly reject plaintiffs' general challenge to Mr. Bowers' testimony. Plaintiffs assert that Mr. Bowers was never properly qualified as an expert witness, they had a continuing objection to his testimony, and his statements concerning certain legal principles demonstrate that he was unreliable as a witness. These arguments are without merit. While Mr. Bowers may have been disclosed initially only as a fact witness, the trial court specifically recessed the hearing when Mr. Bowers appeared to be venturing into expert witness testimony. The court directed defendant to disclose his background and other materials to plaintiffs pursuant to V.R.C.P. 26(b)(4), and it allowed plaintiffs time to depose Mr. Bowers if they so chose. Trial resumed approximately a month later, at which point, the trial court found sufficient evidence to establish Mr. Bowers' qualifications as an expert. Plaintiffs raised no objection to Mr. Bowers' testimony, and there is no support for their assertion that they had a "continuing objection" to this witness. Finally, it was for the trial court, not this Court, to assess Mr. Bowers' credibility. See Mullin v. Phelps, 162 Vt. at 261, 647 A.2d at 720 (role of Supreme Court in reviewing findings of fact is "not to reweigh evidence or to make findings of credibility de novo"). The record discloses no reversible evidentiary errors.
¶ 33. Plaintiffs next argue that they were entitled to damages because it was undisputed that defendant destroyed their fence, gate, and gravel driveway. The trial court rejected this claim, finding that plaintiffs were not entitled to damages for the loss of any structures not within the easement as the court construed it. We also note that defendant's evidence supported the conclusion that he engaged in the minimum self-help necessary to remove the trespassing structures and constructed a replacement fence on his land at the easement boundary found by the trial court.
¶ 34. Plaintiffs committed a trespass by making improvements on defendant's land in support of an access right they did not enjoy. See Restatement (Second) of Torts § 158 (1965). It appears that plaintiffs made at least some of these improvements after it had become clear that the boundaries of the easement were disputed. Under these circumstances, they are not entitled to a remedy.
¶ 35. Finally, plaintiffs argue that the trial court erred in denying their renewed request for a jury trial. They maintain that they did not waive their right to a jury trial "in open court" as required for an oral waiver by V.R.C.P. 39(a)(1). This assertion is belied by the video recording from the trial court, which unquestionably shows that the waiver took place in open court on the record.
Affirmed.
NOTES
[1] Mr. Warren died after the case arose but before he could be deposed or give evidence as to his intent in the deeds.
[2] In their reply brief, plaintiffs assert for the first time on appeal that their deed for Lot 5 must be read together with a purchase-and-sale agreement from the Warrens for the lumber business. Like other evidence in this case, the purchase-and-sale agreement provision cuts both ways. It states that "[s]eller to convey easements in the Warranty Deed to Purchaser for . . . [y]ard fence which presently encroaches upon Lot 3." Yet, as the trial court found, the Warrens did not convey an easement for the yard fence to plaintiffs in the warranty deed. Again, we emphasize that the weight to be assigned to the conflicting evidence is for the trial court to determine.