2010 VT 74

## Gregg H. Beldock and Elizabeth Beldock v. Town of Charlotte

[9 A.3d 304]

No. 09-007

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 13, 2010

*Joseph D. Fallon*, Hinesburg, for Plaintiffs-Appellants.

*John H. Klesch* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Plaintiffs appeal from a superior court order granting summary judgment to defendant Town of Charlotte. Plaintiffs argue the Town is required to maintain gates and fences

along a Town-owned private lane providing access to plaintiffs' property. The trial court ruled that the Town "has no obligation or duty to erect, maintain, close, or open any gate(s) at either end" of the lane, nor any "obligation or duty to erect, or maintain any fence(s) along any portion of the length of, or in the vicinity" of the lane. We affirm.

¶ 2. The facts are largely uncontested. In May 1965, landowners Romeo and Deloise Plouffe conveyed to the Town of Shelburne an eighty-acre parcel for use as a landfill, as well as a fifty-foot right-of-way providing access to the parcel. The right-of-way, which was apparently never used, ran east, beginning at the north-south highway leading to Burlington and ending at the eighty-acre parcel. The conveyance required the Town of Shelburne to "construct and maintain gates" at either end of the right-of-way. The deed also indicated that "[t]he gate at the westerly boundary of the right-of-way shall be locked each afternoon at five o'clock." In July 1965, the Plouffes conveyed another fifty-foot right-of-way to the Town of Shelburne, which was to become the heart of the present controversy. That right-of-way, locally known as Plouffe Lane, runs from present-day Carpenter Road north to the southern edge of the eighty-acre landfill parcel. In the deed creating this second right-of-way, the Town of Shelburne agreed to erect fences on both sides of the right-of-way. The Plouffes retained for themselves use of the lane and the right to insert gates in the fences as necessary for their farming activities.

¶ 3. Twenty years later, in 1985, the Town of Shelburne conveyed both the eighty-acre parcel and Plouffe Lane to the Town of Charlotte. The 1985 deed of conveyance cited the 1965 deeds to help demarcate the physical boundaries of each parcel and to provide an extension of the "reservations and conditions" of the previous transactions.

¶ 4. On March 29, 1996, Yvon Plouffe, Romeo and Deloise's son, sold plaintiffs 184.7 acres bordering Plouffe Lane and the Town's parcel. The Charlotte Planning Commission had approved a plan whereby plaintiffs could subdivide and sell this land. The deed expressly excepted a ten-foot-strip of land adjacent to Plouffe Lane to be conveyed to the Town of Charlotte to increase the width of the existing roadway. Plaintiffs' deed included shared use of the Plouffe Lane right-of-way, which was described as a "60 foot wide strip of land conveyed to the Town of Charlotte by

Warranty Deed of even or approximately even date herewith," though the document formally transferring the ten-foot strip to the Town had not yet been executed. Plaintiffs' deed referenced the 1965 conveyances to describe the physical location of the right-of-way and incorporated two utility easements and a covenant by Plouffe not to use the portion of land he retained as a "piggery." The document included no reference to any of the covenants contained in the 1965 deeds.

¶ 5. On April 16, the Town conveyed ownership of the fifty-foot-wide lane, over which Plouffe and plaintiffs held a right-of-way, to Plouffe. This deed acted in conjunction with a separate deed signed the previous day conveying a wider, sixty-foot version of the lane from Plouffe to the Town. The April 15 deed from Plouffe to the Town recognized the next day's transaction as occurring on the "even or approximately even date herewith" and expressed the same purpose: "to enlarge the width of the strip of [Plouffe Lane] to 60 feet and clarify the access easements related to said land." The deeds referenced the 1965 and 1985 conveyances when demarcating the physical boundaries of the current fifty-foot-wide lane, operating "in further aid of [the parcel's] description." The deed executed on April 16 referenced plaintiffs' right-of-way and the utility easements incorporated in plaintiffs' March 29 deed, but made no mention of any other covenants. All three deeds stated that the land passed "free from every encumbrance."

¶ 6. Plaintiffs own and live on the plot of land they purchased from Plouffe and use the lane to enter and exit their property. They raise sheep and chickens while baling hay on roughly 100 acres of their land. The present controversy arose from plaintiffs' concerns regarding the speed at which public vehicles traveled Plouffe Lane to and from a town-owned natural area occupying the former landfill, as well as the Town's alleged failure to close gates leading to the lane. In their initial complaint, from 2007, plaintiffs sought (1) injunctive relief, (2) damages for nuisance, and (3) declaratory relief; they claimed the Town misused Plouffe Lane and had a duty to maintain and routinely close and lock gates at both ends of the lane. Plaintiffs later amended their complaint to include a claim that the Town had a related obligation to maintain fences.

¶ 7. The Town moved for summary judgment on the first and third claims for injunctive and declaratory relief, arguing that any increase in motor vehicles over the right-of-way was not hindering

or obstructing plaintiffs' use of the lane and the deeds at issue did not require the Town to maintain, close, or lock gates on the lane. The Town relied upon the language and structure of the 1996 deeds and argued that merger of ownership in Plouffe had extinguished any previous covenants burdening the Town's land due to the unified nature of the transactions between Plouffe, the Town, and plaintiffs. In their cross-motion for summary judgment, plaintiffs urged the court to enjoin the Town from using the lane until the Town made appropriate improvements to increase the lane's safety. Plaintiffs claimed the covenants regarding gates and fencing dating to the 1965 deeds remained in force because they acquired their property and its associated rights some two weeks before the Town's double-deed transaction in April 1996.

¶ 8. Regarding the claim for existing covenants, the trial court found that the 1996 deeds were unambiguous and that the Town had no obligation as to gates or fences. Relying on the structure of the two April 1996 deeds and their stated purpose to "enlarge the width of [Plouffe Lane] and clarify the access easements related to said land," the trial court found that "[n]o reasonable reading of these deeds could find any obligation regarding gates or exclusive use because they are silent on these issues." The trial court further reasoned that the double-deed transaction in April 1996 — and the reference to it in plaintiffs' deed — temporarily vested Plouffe with unitary ownership of the right-of-way land, thus extinguishing through the doctrine of merger any existing covenants, easements, or right-of-way rights Plouffe possessed. Absent any language clearly establishing the Town's duty to construct or maintain fences or gates, the trial court concluded that the Town had no duty to maintain, close, or lock gates.[1]

¶ 9. On appeal, plaintiffs argue that the deeds place restrictive covenants upon the Town because: (1) the deed language is ambiguous, and extrinsic evidence supports the existence of covenants; (2) merger did not apply since the ownership of all properties was only partial; (3) the Town must maintain gates and

---

[1] In October 2008, plaintiffs moved for a determination of whether the Town owed any obligation to erect and maintain fences along Plouffe Lane because the trial court addressed only the gates issue in its opinion. The trial court held that the Town owed no obligation to maintain fences for the same reason it owed no obligation to close or maintain gates. Plaintiffs voluntarily moved for dismissal of their first two claims — one for injunctive relief and the other for nuisance — to appeal the trial court's grant of summary judgment to the Supreme Court.

fences when those requirements arise from covenants running with the land; (4) despite no mention of these covenants in plaintiffs' deed, plaintiffs may still enforce them; and (5) plaintiffs did not waive their right to enforce these covenants. Because we find the deed language is unambiguous, merger did apply, and any existing covenants were extinguished, we need only reach the first two issues to conclude that the trial court correctly decided summary judgment in favor of the Town.

¶ 10. We review a grant of summary judgment de novo. *Madkour v. Zoltak*, 2007 VT 14, ¶ 12, 181 Vt. 347, 924 A.2d 11. The movant is entitled to judgment as a matter of law only when no genuine issue of material fact exists. V.R.C.P. 56(c)(3); *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). In questions regarding the ambiguity of deeds, we apply the same standard as the trial court. See *Creed v. Clogston*, 2004 VT 34, ¶ 13, 176 Vt. 436, 852 A.2d 577. When a deed presents a clear and unambiguous restriction, we must enforce the instrument according to its terms and without resorting to other rules of construction. *Id.*; see also *Mann v. Levin*, 2004 VT 100, ¶ 14, 177 Vt. 261, 861 A.2d 1138. In examining a deed, the parties' intent governs, and a court must "consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning." *DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted). Only after finding reasonable people could differ as to an instrument's interpretation do we consider evidence outside the instrument's four corners. *Id.*

¶ 11. As a threshold matter, we discern no ambiguity in the language of the three 1996 deeds that would necessitate resort to extrinsic evidence. Extrinsic evidence is warranted only when "reasonable people could differ as to its interpretation," but when unambiguous, the terms are enforced as the instrument states. *Id.* (quotation omitted). Plaintiffs claim the language of the April 1996 deeds between Plouffe and the Town creates ambiguity because the stated purpose of one of the documents was to clarify "access easements." They argue that any requirement to build or maintain fences and gates is unrelated to access, and that this alleged ambiguity warrants the examination of circumstances surrounding the transaction, including affidavits from Plouffe and plaintiffs' attorney indicating that they had no intention to "extinguish or terminate" the Town's obligations regarding gates or fences on

Plouffe Lane. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 85 (1988) ("If ambiguity is found . . . the court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms."). This argument is unavailing. Failure to mention any obligations regarding fences or gates in the deed, or to reference the 1965 deeds for any other purpose than to clarify the physical boundaries of the right-of-way, constitutes an omission, not an ambiguity.[2] Further, the term "access easement" is not, on its face, ambiguous. The straightforward term sets forth the rights granted the parties in the deeds with respect to ingress and egress. Plaintiffs seek to find ambiguity within this term to justify the consideration of the same extrinsic evidence they contend creates the ambiguity by demonstrating their allegedly contrary intent. We do allow "limited extrinsic evidence of circumstances surrounding the making of the agreement in determining whether the writing is ambiguous." *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999) (quotation omitted). But that evidence is relevant "only when, *in combination with the writing*, it supports an interpretation that is different from that reached on the basis of the writing alone, and both are *reasonable.*" *Id.* (emphases added). We agree with the trial court that "[n]o reasonable reading of these deeds could find any obligation regarding gates or exclusive use because they are silent on these issues." Because the deeds are unambiguous, we must enforce the plain meaning of the documents.

¶ 12. If plaintiffs had desired to place restrictions upon the Town — or to have covenants regarding fences or gates continue — they could have negotiated for their inclusion in the deed. In this instance, plaintiffs' deed specifically incorporates a sixty-foot right-of-way to be used in common with Plouffe and others. No covenants or restrictions regarding fences or gates along the right-of-way are included in the text, although plaintiffs could easily have included such language in the deed. Indeed, the deed specifically acknowledges a simultaneous grant of development rights and conservation restrictions by Plouffe to the Vermont

---

[2] We note that the two 1965 deeds to the Town of Shelburne, the original owner of the fifty-foot strip, created two entirely separate rights-of-way. Only the first, which created a right-of-way that was apparently never used and is not at issue here, made any reference to a requirement to construct or lock gates at any particular time. The second deed, which conveyed Plouffe Lane, refers only to the maintenance of gates and the construction of fences.

Land Trust, two existing utility easements along the right-of-way, and a new covenant prohibiting Plouffe from operating a "piggery" on an adjoining lot. In the deed, plaintiffs also accepted a covenant restricting the subdivision of their own lot as well as responsibility for any reduction in the quality or quantity of water flowing into and out of a spring box caused by use of their right-of-way.[3] The specificity and breadth of easements and covenants recognized by plaintiffs as part of the overall transaction clearly demonstrate plaintiffs had ample ability and opportunity to clarify lingering doubts and change the terms of the parties' obligations.

¶ 13. Because our analysis properly centers on the language of the deeds themselves, we turn now to the question of merger. Plaintiffs contend that no merger occurred because Plouffe did not consolidate complete ownership of the lane and his remaining property until two weeks after the execution of the deed granting plaintiffs their parcel. Under this linear analysis, plaintiffs would have preserved the benefit of any covenants existing before the merger of the Town's and Plouffe's properties. This argument is unpersuasive because it ignores the interrelatedness of the three deed documents, contradicts the documents' plain language regarding dates, and would yield the absurd result of depriving plaintiffs of their current access easement.

¶ 14. We note that the trial court correctly analyzed the 1996 deeds as a "single, unified transaction." All three documents made reference to one another, and indeed, many of the property and rights transfers included within them were necessary prerequisites to the satisfaction of the obligations each contemplated. Plouffe could not, for example, have conveyed a sixty-foot-wide wide tract of land containing Plouffe Lane to the Town before first receiving the existing fifty-foot tract to be combined with the ten-foot strip reserved from plaintiffs. The deeds and their related obligations are thus so closely connected that they must be

---

[3] In passing, we observe that plaintiffs were sufficiently acquainted with the appropriate process regarding the creation of covenants, restrictions, and easements when they obtained approval from the Charlotte Planning Commission to subdivide and develop the land acquired from Plouffe. As part of that transaction, plaintiffs executed a detailed declaration of conservation easements and restrictions. The document included restrictions on snowmobiles, mobile homes, the size and structure of buildings on lots, the outside appearance of structures, as well as a covenant not to sue.

regarded as a single transaction and be interpreted to take effect in the order necessary to effectuate their purpose.

¶ 15. The specific language regarding the dates of execution of the related documents further supports the conclusion that all three deeds formed part of a single transaction. All three deeds used the legal term-of-art "even date" when referring to events contemplated in the other documents. As used in the deeds, the term means "the same date" and can be "used in one instrument to refer to another instrument with the same date, [especially] when both relate to the same transaction." Black's Law Dictionary 635 (9th ed. 2009). Plaintiffs' March 29 deed uses the phrase when referencing the transfer of the sixty-foot-wide lane from Plouffe to the Town contemplated in the April 15 deed: "Included herewith is a right of way, used by Grantees, and theirs heirs and assigns, in common with the Grantor and others, for ingress and egress for foot and vehicular traffic over the 60 foot wide strip of land conveyed to the Town of Charlotte by Warranty Deed of *even or approximately even date* herewith . . . ." (Emphasis added.) The April 16 deed transferring the fifty-foot version of Plouffe Lane from the Town to Plouffe also uses the term to describe the date of the transfer included in the April 15 deed. This term-of-art establishes a single date for these multiple transfers of land; if not setting the date of conveyance to the "approximately even date" of the April 16 Town-to-Plouffe transaction, then at least affixing a flexible timeline of interpretation to the transfers. Therefore, the trial court correctly recognized the unitary nature of this transaction — a single conveyance occurring by tripartite means that logically established a single landowner, albeit for a brief moment, through the conveyance process.

¶ 16. Plaintiffs urge us to ignore the strict language of the deeds and instead consider the timeline of events. They argue for a linear examination of the execution of the 1996 deeds, which results in plaintiffs holding their property before to the Plouffe-Town double-deed, and, therefore, retaining any appurtenant fence or gate covenants. Under plaintiffs' interpretation, Plouffe would have granted plaintiffs a right-of-way over a sixty-foot wide lane in which Plouffe did not gain an ownership interest until the April deeds. At the time of the conveyance to plaintiffs, Plouffe's right-of-way ran over only a *fifty-foot* lane; thus, the conveyance of a right-of-way over a sixty-foot lane would be ineffective. For plaintiffs to hold any current right-of-way interest, the three

deeds between March and April must be read as a single unified transaction. Doing so created a single land owner in Plouffe and merged the properties, permitting the desired transfer of property, clarifying access rights, and extinguishing all covenants on Plouffe Lane.

¶ 17. Because Plouffe necessarily consolidated ownership of his property and the lane, the doctrine of merger applies. As we have explained before, "[o]nce the title to the adjoining properties vested . . . , the right-of-way was extinguished by the unity of ownership and possession." *Capital Candy Co. v. Savard*, 135 Vt. 14, 15, 369 A.2d 1363, 1365 (1976); see also 9 R. Powell, Powell on Real Property § 60.10[1], at 60-120 to 60-121 (2000) ("[T]he merger or unity of ownership of both the benefitted and burdened lands extinguishes the covenant . . . ."). The language of the deeds confirms that Plouffe held all relevant land: Plouffe possessed plaintiffs' land, granting them only a right-of-way; he simultaneously held the fifty-foot-wide Plouffe Lane; and, finally, held his own land, including the retained right-of-way. All benefited land — plaintiffs' and the Plouffe's — merged with the Town's burdened land, Plouffe Lane, and any existing covenants were thus extinguished. To preserve a covenant on the lane would have required the parties to include language in the conveyances of 1996 — a step they chose not to take.[4]

¶ 18. The stated purposes of the April deeds — which transferred ownership of the lane from the Town to Plouffe and back again — support the conclusion that they were designed to accomplish the merger and elimination of any existing gates or fences covenants. Each April deed acknowledged that it was "one of two deeds to enlarge the width of the strip of [Plouffe Lane] to 60 feet and clarify access easements related to said land." Had Plouffe and the Town wished only to enlarge the lane, Plouffe could have conveyed the additional ten-foot strip to the Town; instead, he opted to use a double-deed.

---

[4] Plaintiffs argue for the inclusion of certain extrinsic evidence, mainly affidavits prepared in 2008 from Plouffe and the attorney who drafted the 1996 conveyances recounting the 1996 transactions. Plaintiffs contend these affidavits show that the parties did not intend to extinguish the gates and fences covenants. Though these affidavits may show that the parties intended the 1965 covenants to remain in place, their actions legally extinguished previous covenants without any express reservation of desired covenants.

¶ 19. Plaintiffs argue that, since they were not signatories and had no control over this double-deed transaction between Plouffe and the Town, the intent to extinguish any covenants cannot be ascribed to them, and, thus, the conveyance from Plouffe to plaintiffs should be viewed as separate from the April deeds. We find this argument unconvincing. Firstly, though plaintiffs' deed expressly recognizes only one of the April deeds — the Plouffe-to-Town conveyance — the references within plaintiffs' deed to the then-fifty-foot-wide lane and the soon-to-be-conveyed sixty-foot lane assures us that plaintiffs were aware of Plouffe Lane's imminent enlargement and transfer. Plaintiffs' deed also specifically noted the reservation of the ten-foot-wide strip of land along the lane for transfer to the Town. Secondly, the noted inclusion of "even date" in plaintiffs' deed supports the conclusion that these conveyances legally occurred simultaneously and that the parties were aware of what property composed the various components of the transaction to which they were agreeing. Lastly, as noted above, for the sixty-foot-wide Plouffe-to-Town grant to be proper, the Town-to-Plouffe component of the double-deed — returning the lane to Plouffe — must be interpreted as occurring before the Plouffe-to-Town grant returning the enlarged lane. This construction achieved the April deeds' express intent as it both enlarged the lane and clarified easements and covenants upon that land. Regardless of plaintiffs' unspoken, or at least unwritten, intent in purchasing the land, the legal effect remains the same: The Town has no obligation to construct or maintain gates or fences. See *DeGraff*, 2007 VT 95, ¶ 20 ("If a writing is unambiguous . . . , we must enforce the terms as written without resort to rules of construction or extrinsic evidence." (quotation omitted)).

*Affirmed.*