NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 5

No. 22-AP-192

| | |
|---|---|
| Jeffrey Gladchun and Alyssa Gladchun | Supreme Court |
| v. | On Appeal from Superior Court, Addison Unit, Civil Division |
| Michael Eramo, Diane Eramo and New Cingular Wireless, PCS, d/b/a AT&T | November Term, 2022 |

Thomas Carlson, J.

Jeffrey P. White of Pratt Vreeland Kennelly Martin and White, Ltd., Rutland, for Plaintiffs-Appellants.

Christopher D. Roy, William J. Dodge, and Alexis L. Peters of Downs Rachlin Martin PLLC, Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Jeffrey and Alyssa Gladchun appeal a decision granting summary judgment to neighboring landowners, Michael and Diane Eramo, and the Eramos' lessee, New Cingular Wireless, PCS, d/b/a AT&T (AT&T). The civil division concluded that a deed granting a right-of-way for "ingress and egress" to the Eramos was unambiguous and did not limit AT&T from installing utility lines under the right-of-way to service a planned communications tower. We agree that the deed is unambiguous as to the right-of-way. However, we disagree that it expresses more than the plain, ordinary meaning of "ingress and egress," which does not include installing underground utilities. Accordingly, we reverse and remand.

¶ 2.     The following material facts are undisputed.  Until 1950, the lands in question comprised an undivided portion of a farm located in Granville, Vermont.  In that same year, the Rice Lumber Company acquired the property and conveyed it to the Dudley D. Rice Lifetime Trust, for which Dudley Rice served as trustee.  In 1981 and 1982, Rice subdivided the property, eventually conveying nine lots to various buyers, including the Gladchuns' and Eramos' predecessors-in-interest.  Lots 7, 8, and 10 are involved in this dispute.[1]

¶ 3.     James Daley acquired Lot 8 from Rice in January 1981, and Lot 7 in June 1982.[2] In turn, the Gladchuns acquired Lots 7 and 8 from Daley in January 2021.  Rice conveyed Lot 10 to Wendy and Edward Eramo, Jr. in January 1981.  Michael and Diane Eramo, defendants-appellees here, acquired Lot 10 in October 2015.

¶ 4.     Lot 10 is benefitted by a thirty-foot right-of-way[3] beginning at North Hollow Road and crossing over Lots 7 and 8; it is the only access to Lot 10.  The right-of-way is described as follows in the 1982 deed conveying Lot 10 to the Eramos' predecessors-in-interest, which is incorporated by reference in the deed that the Eramos now hold:

> [A] right of way 30 feet in width leading westerly from said North Hollow Road first through Lot 8 and then through Lot 7 as shown on said LaRose survey map to a point at the northerly end of the conveyed premises.  Said right of way follows the course of an existing wood road and the center line of said right of way is indicated by an intermittent line on said LaRose survey map.  Said right of way is for the purpose of ingress and egress to and from the conveyed premises.

---

[1]  All relevant deeds in this matter are warranty deeds.

[2]  Rice also conveyed Lots 5 and 6 to Daley in April 1981, but those lots are not involved in this dispute.  Daley conveyed Lot 6 to the Gladchuns in January 2021.

[3]   For purposes of this opinion, we use the terms "easement" and "right-of-way" interchangeably.  See 28A C.J.S. Easements § 10 (2022) (explaining that these terms are generally regarded as synonymous); see also U.S. Forest Serv. v. Cowpasture River Preserv. Ass'n, 140 S. Ct. 1837, 1844 (2020) ("A right-of-way is a type of easement.").

2

¶ 5.    In March 2021, the Eramos granted AT&T an option to lease a portion of Lot 10 to construct a 195-foot-high communications tower. AT&T's proposal includes placing the tower within a fifty-by-fifty-foot enclosure, accessed by an improved skidder trail branching off the right-of-way on the Eramos' lot. AT&T intends to "stabilize" the right-of-way and bury power and telephone lines under it beginning from an existing utility pole at North Hollow Road. AT&T would also install above-ground pull boxes in the right-of-way every 300 to 500 feet. AT&T's plan would not widen the right-of-way.

¶ 6.    The Gladchuns filed suit in April 2021 seeking injunctive relief and a declaratory judgment that the proposal violated the express terms of the deed. They argued that the term "the right of way is for the purpose of ingress and egress to and from the conveyed premises" is unambiguous and does not permit underground utility lines. AT&T answered with denials and counterclaimed seeking a declaratory judgment to use the right-of-way under the deed's express terms or in the alternative as an easement by necessity.[4]

¶ 7.    Following discovery, the civil division granted defendants' motion for summary judgment, which they filed only on the question of whether the deed's express terms permitted underground utility lines. The trial court cited VTRE Investments, LLC v. MontChilly, Inc. for the proposition that "[w]here the intent is clearly to create a right of ingress and egress, but the language of the deed is general," the dominant estate "is 'entitled to a convenient, reasonable, and accessible way.' " 2020 VT 77, ¶ 23, 213 Vt. 175, 249 A.3d 646 (quoting Patch v. Baird, 140 Vt. 60, 66, 435 A.2d 690, 692 (1981)). Using this framework, the court found that the deed unambiguously "creat[es] a general right of reasonable ingress and egress," and that "nothing whatsoever in any of the . . . [d]eeds . . . limits the use of the easement in any way with respect to

---

[4] In January 2022, after applying to obtain a certificate of public good from the Vermont Public Utility Commission, AT&T provided sixty-day advance notice pursuant to 30 V.S.A. § 248a(e), to adjoining landowners, including the Gladchuns. The record reflects that the Commission has not issued a certificate to AT&T.

the use or uses of the benefitted properties." It relied on a comment to § 4.10 of the Restatement (Third) of Property to determine "what is included in a general right of reasonable ingress and egress." It concluded that because the deed contained no express limits, and no facts or circumstances indicated Rice, Daley, or the Eramos intended otherwise, the installation of underground utilities was a reasonable use of the right-of-way. The court reasoned that these facts also came within § 4.10's rationale that normal advances in technology can permissibly increase "the manner, frequency, and intensity" of uses over time, and cited previous cases of this Court for that proposition.

¶ 8.     On appeal, the question presented is whether the deed term granting the right-of-way "for ingress and egress" permits the Eramos and AT&T to install underground utilities in the right-of-way. The Gladchuns' primary argument is that the deed term unambiguously limits the use to the plain meaning of "ingress and egress," which does not include installing underground utilities. In the alternative, they contend that if the Court concludes that the term is ambiguous, the proposed use overburdens the easement given the surrounding facts and circumstances.

¶ 9.     We conclude that the term is unambiguous and the plain meaning of "ingress and egress" does not permit AT&T's current proposal. Therefore, we do not address the Gladchuns' argument that the proposed use overburdens the right-of-way. The term unambiguously does not permit the installation of underground utility lines, and since the lines cannot be installed under the express terms of the deed, the issue of whether this would overburden the easement is moot.

¶ 10.     "We review decisions for summary judgment using the same standard as the trial court." Farrell v. Vt. Elec. Power Co., 2012 VT 96, ¶ 9, 193 Vt. 307, 68 A.3d 1111. We affirm the decision if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id.; see also V.R.C.P. 56(a). We give the nonmoving party the benefit of all reasonable doubts and inferences. Farrell, 2012 VT 96, ¶ 9.

4

¶ 11. "An easement is an interest in land consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." Wagner v. Crossland Const. Co., 2013 ND 219, ¶ 6, 840 N.W.2d 81 (quotation omitted). "An easement may be acquired by express grant, implied grant, or prescription." McDonald v. Bd. of Miss. Levee Com'rs, 646 F. Supp. 449, 465 (N.D. Miss. 1986).

¶ 12. "The interpretation of an express easement is a question of law, which we review de novo." Post & Beam Equities Grp. v. Sunne Vill. Dev. Prop. Owners Ass'n, 2015 VT 60, ¶ 56, 199 Vt. 313, 124 A.3d 454 (quotation omitted). "The touchstone for interpreting the scope of an express easement is the intent of the original parties to the easement." MontChilly, Inc., 2020 VT 77, ¶ 23. We first "look to the language of the written instrument because it is assumed to declare the intent of the parties." Kipp v. Est. of Chips, 169 Vt. 102, 105, 732 A.2d 127, 130 (1999). "[W]hen looking at particular language in a deed, the court must accept the plain meaning of the language . . . ." Id. at 107, 732 A.2d at 131; see Simpson Dev. Corp. v. Herrmann, 155 Vt. 332, 334-35, 583 A.2d 90, 92 (1990) (explaining that Court accepts plain, ordinary, and popular meaning of disputed contractual language). Language is unambiguous if reasonable people could not differ as to its interpretation. See Sanville v. Town of Albany, 2022 VT 22, ¶ 15, __ Vt. __, 279 A.3d 127. On the other hand, "[a]mbiguity exists if the extrinsic evidence, in combination with the writing, supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable." Main St. Landing, LLC v. Lake St. Ass'n, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.) (quotation omitted). If the term is unambiguous, the Court enforces it "as written without resort to rules of construction or extrinsic evidence." DeGraff v. Burnett, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted).

¶ 13. We turn first to the deed term "[s]aid right of way is for the purpose of ingress and egress to and from the conveyed premises," and define "ingress" and "egress." See Sanville, 2022 VT 22, ¶ 18 (using dictionary definitions to establish plain, ordinary meaning of material deed

5

terms). The Merriam-Webster Online Dictionary provides two definitions for "ingress": (1) "the act of entering"; (2) "the power or liberty of entrance or access." Ingress, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/ingress [https://perma.cc/8FZU-42UP]. Conversely, it provides the following definitions for "egress": (1) "a place or means of going out"; and (2) "the action or right of going or coming out." Egress, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/egress [https://perma.cc/M2F9-QCS4].

¶ 14. The civil division did not define "ingress and egress" in its analysis to determine the plain, ordinary meaning of the terms. See Kipp, 169 Vt. at 107, 732 A.2d at 131 ("[W]hen looking at particular language in a deed, the court must accept the plain meaning of the language . . . ."). This was error. The plain meaning of the words ingress and egress convey a right for defendants to enter and leave Lot 10 using the right-of-way. Nothing we can discern in the definitions of either word individually, or in combination, denote a right to install underground utilities.

¶ 15. Even without defining the operative language, the court nonetheless concluded that the deed was unambiguous and "create[s] a general right of reasonable ingress and egress." However, the deed describes the right-of-way as being thirty feet wide and locates its course by reference to the LaRose survey map. Because the deed both defines and limits the right-of-way, it is not what this Court has previously described as a "general" right-of-way. The trial court's citation to MontChilly for the proposition that this deed term is "general" was therefore also error.

¶ 16. In pertinent part, MontChilly involved the scope of use of a deeded right-of-way. The deed at issue in MontChilly did not describe the location or dimensions of the right-of-way, though it did grant "a right to pass and travel over other land of the grantor for the purpose of ingress and egress." 2020 VT 77, ¶ 20 (quotation marks omitted). Because the right-of-way in MontChilly was neither located or defined with respect to its dimensions, we cited Patch v. Baird for the rule that:

6

> [w]here the intent is clearly to create a right of ingress and egress, but the language of the deed is <u>general</u>, "the owner of the easement is entitled to a convenient, reasonable, and accessible way, having regard to the interest and convenience of the owner of the land as well as their own."

<u>MontChilly, Inc.</u>, 2020 VT 77,¶ 23 (quoting <u>Patch</u>, 140 Vt. at 66, 435 A.2d at 692) (emphasis added); see also <u>Clearwater Realty Co. v. Bouchard</u>, 146 Vt. 359, 361-62, 505 A.2d 1189, 1190-91 (1985) (citing rule regarding undefined rights-of-way and explaining that "when the width of an easement is undetermined by the deed 'the law says that it shall be of a reasonable width, considering the purpose for which it was intended' " (quoting <u>Cty. of Addison v. Blackmer</u>, 101 Vt. 384, 388, 143 A. 700, 701 (1928)).  This language comes from a line of cases including <u>LaFleur v. Zelenko</u>, 101 Vt. 64, 141 A. 603 (1928), in which we have explained that where the parties to a deed "did not locate the right of way, but simply granted the right without limiting or defining it, the grantees [are] entitled to a convenient, reasonable and accessible way," taking into account the interest and convenience of both the dominant and servient estate owners.  101 Vt. at 70, 141 A. at 605; see <u>Stevens v. MacRae</u>, 97 Vt. 76, 80-81, 122 A. 892, 894 (1923) (holding that where "right of way in question was granted in general terms without giving a definite location or description of it," grantee is entitled to "convenient, reasonable, and accessible way" but "has no right to an arbitrary location"); see <u>Kinney v. Hooker</u>, 65 Vt. 333, 337, 26 A. 690, 691 (1893) ("The deed in this case did not locate the way.  It granted the right, but did not limit or define it.  The grantee was entitled to a convenient, reasonable and accessible way, and such a way could be located by the agreement of the parties.").

¶ 17.    The present dispute is different.  As the deed makes clear on its face, the right-of-way is for the purpose of ingress and egress to Lot 10, limited to thirty feet in width, and is located on the course described on the LaRose survey map.  In other words, it is limited and defined.  Where a deed unambiguously limits and defines a right-of-way, as here, our inquiry ends, and we enforce the deed as written.  <u>Beldock v. Town of Charlotte</u>, 2010 VT 74, ¶ 11, 188 Vt. 345, 9 A.3d

7

304 ("Because the deed[] [is] unambiguous, we must enforce the plain meaning of the document[]."). Accordingly, we need not consider what constitutes a "convenient, reasonable, and accessible way" in this case because the deeded right-of-way is the unambiguous result of an "arms-length negotiation[]" between the original parties to the deed. Farrell, 2012 VT 96, ¶ 11. Nor do we need to consider what uses may constitute an overburden of the easement.[5] The trial court's conclusion that the deed "create[es] a general right of reasonable ingress and egress," and that "nothing whatsoever in any of the . . . deeds . . . limits the use of the easement in any way with respect to the use or uses of the benefitted properties," are therefore incorrect statements of law.

¶ 18. Defendants counter that this Court should adopt comment d to § 4.10 of the Restatement (Third) of Property (2000), which states that:

> O, the owner of Blackacre, granted an easement to Able, the owner of Whiteacre, for 'ingress and egress' from Whiteacre to the public street abutting Blackacre. The deed did not specify whether utility lines could be placed in the easement. Unless the facts or circumstances suggest that the parties intended otherwise, it would be proper to define the purpose of the easement generally to include access for anything that could conveniently be transported through the easement corridor and that would normally be used in connection with property situated like Whiteacre, including utility services.

¶ 19. We do not follow the Restatements if there "is a strong rationale to the contrary." Langlois v. Town of Proctor, 2014 VT 130, ¶ 34, 198 Vt. 137, 113 A.3d 44. There are strong policy rationales to the contrary here. First, the comment states that in the absence of an express grant for the use of "utility lines" in a deeded easement, it is proper for courts to impute such a grant into an unambiguous deed absent facts and circumstances tending otherwise. That runs contrary to our long-standing rule for interpreting deeds in Vermont, which is to enforce the intent

---

[5] However, we have previously determined that an express easement was unambiguous and also considered whether a particular use overburdened it. See, e.g., Farrell, 2012 VT 96, ¶¶ 12-15. We do not intend to imply that an overburden analysis is never appropriate where a deed is unambiguous.

of the original parties, using whenever possible the plain, ordinary, and popular meaning of the language contained in the document. See Rowe v. Lavanway, 2006 VT 47, ¶ 11, 180 Vt. 505, 904 A.2d 78 (mem.).

¶ 20. Second, the Vermont Constitution vigorously protects private-property ownership, and the present character of the state is indicative of this feature. See, e.g., Vt. Const. ch. I, art. 1 ("That all persons are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety . . . ."); Shields v. Gerhart, 163 Vt. 219, 225-26, 658 A.2d 924, 929 (1995) (explaining that while Article 1 is not self-executing, it was "designed first and foremost to set a direction for civil society and to express and institutionalize a theory of republican government." (quotation omitted)). Accordingly, we conclude that comment d to § 4.10 has little relevance to Vermont given Vermont's unique character and history. While a policy favoring the implication of a right to install utility lines where an otherwise unambiguous express easement is silent on the issue may exist in other jurisdictions, it does not fit well in Vermont. Since its founding, the people of the state have expressed a robust commitment to private-property ownership. See generally State v. Kirchoff, 156 Vt. 1, 14-19, 587 A.2d 988, 997-98 (1991) (Springer, Dist. J. (Ret.), Specially Assigned, concurring) (explaining centrality of property rights in early Vermont and noting that "[p]rotection of citizens' rights to security in their land was a key motivating force in creating the Vermont Constitution"). This Court's long-standing rules of deed interpretation reflect this commitment.

¶ 21. Finally, the civil division did not rule on defendants' alternative argument that Lot 10 is benefitted by an easement by necessity permitting them to install underground utilities to

9

service the communications tower.  Therefore, we remand to the civil division to resolve that question.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Karen R. Carroll, Associate Justice