2006 VT 13

## MAIN STREET LANDING, LLC v. LAKE STREET ASSOCIATION, INC.

[892 A.2d 931]

No. 04-485

¶ 1. January 3, 2006. In this dispute involving the construction of a deed, plaintiff Main Street Landing, LLC appeals the superior court's ruling that the availability of parking spaces in plaintiff's garage located approximately 1200 feet from defendant Lake Street Association, Inc.'s office building did not allow plaintiff to terminate its obligation to provide defendant sixty-five parking spaces within 300 feet of defendant's building. We affirm.

¶ 2. In late 1985, Lake Street Association's predecessor-in-title, McKenzie Associates, negotiated with Alden Waterfront Corporation, which later became Main Street Landing, for the purchase of two historic brick mill buildings located near Lake Champlain in the City of Burlington. The buildings were subdivided from a much larger parcel owned by Alden, which had extensive plans to develop and reinvigorate portions of the Burlington waterfront. Part of the property that was later sold to Lake Street Association and is the subject of this dispute — the McKenzie building — had no room for parking. Hence, the parties' purchase-and-sale agreement obligated the seller, Alden, to provide parking on its adjacent property — not only to satisfy the practical needs of the building's tenants but also to meet Burlington's zoning requirements.

¶ 3. To obtain a zoning permit, the parties to the transaction had to amend their agreement to include the number of parking spaces then required by the city for the building. City zoning regulations further required that parking spaces be located within 400 feet of the subject property. On December 9, 1985, the city issued a zoning permit conditioned upon parking being provided in perpetuity as set forth in the parties' agreement. The parties' agreement required the seller to provide sixty-five parking spaces to meet the zoning requirements, giving the seller the right to relocate the spaces within 300 feet of the building. The agreement further provided that "[a]ll such parking spaces shall be provided without charge until such time as parking facilities are constructed in connection with the general development of the waterfront area by Seller within 300 feet of the premises." The last clause of the quoted sentence was one of several handwritten additions to the agreement.

¶ 4. On December 10, 1985, the day after the city issued the zoning permit, a bond issue essential to Alden's expansive waterfront development plan failed to win public approval. The sale of the McKenzie building went forward, however, on December 16, 1985. The deed to the property contained the following relevant language concerning parking:

> There is included in this conveyance the license and right to use the number of parking spaces required by the City of Burlington Planning Commission ... but not to exceed 65 spaces under any circumstances, which right shall be appurtenant to the above described Premises, without cost to the Grantee unless or until the provisions set forth in subparagraph 2 occur, and shall be subject to the following rights which are reserved to the Grantor:

> 1. Grantor shall have the right to designate the location of alternative parking spaces to those initially designated

in this deed at any point within 300 feet of any boundary of the Premises;

2. Grantor shall have the right to require Grantee to relinquish the parking spaces provided pursuant to this paragraph when a multistory parking structure is constructed by Grantor or its successors for occupants of the waterfront area and/or the public in connection with the general development of the waterfront area, at which time the Grantee shall have the option to rent the same number of parking spaces as are provided under this paragraph in the parking structure described herein at the then-prevailing rental rate.

¶ 5. In the early 1990's, McKenzie Associates sold the McKenzie building to Lake Street Association's predecessor-in-title. Meanwhile, Alden changed its name to Main Street Landing Company and continued its waterfront development on a smaller scale after the defeat of the bond issue. In the mid-1990's, Main Street developed the Union Station area and built a small parking garage dedicated to that site. From 1985 until 2003, Alden, and later Main Street, provided parking spaces pursuant to the deed within 300 feet of the McKenzie building. In the summer of 2003, upon commencing a construction project adjacent to the McKenzie building, Main Street fenced off most of the parking area used by tenants of the building. A dispute ensued as to parking arrangements, and Lake Street Association sought injunctive relief. The action was resolved by a court order that recognized the parking rights in the deed and accepted a temporary plan that the parties had worked out to satisfy those requirements. The temporary parking provided by the plan was all within 300 feet of the building. When the parties were unable to work out a permanent plan, Main Street filed the instant action, seeking a permanent declaration regarding the parties' rights and obligations concerning parking.

¶ 6. In the declaratory judgment action, Main Street claimed that the availability of parking spaces in the Union Station garage met the condition contained in subparagraph two of the deed's parking provision quoted above, thereby terminating Lake Street Association's right to sixty-five parking spaces within 300 feet of the McKenzie building. For its part, Lake Street Association argued that construction of the Union Street Station garage did not terminate its right to sixty-five parking spaces within 300 feet of the McKenzie building because the garage was located more than 1200 feet from the building and thus did not satisfy the deed's requirement that the parking spaces be located within 300 feet of the building. The superior court ruled in favor of Lake Street Association. After examining the circumstances surrounding the sale of the McKenzie building and finding ambiguity in the relevant deed provision, the court concluded that the parties intended the deed to guarantee the sixty-five parking spaces unless a structure was built that provided parking within 300 feet of the building. On appeal, Main Street argues that the trial court erred: (1) in concluding that the deed is ambiguous regarding the parties' parking rights; (2) in resorting to extrinsic evidence to read into the deed a provision that the parties had deleted in an earlier deed draft; and (3) in rejecting the parties' demonstrated intent on the basis that it was illogical.

¶ 7. When construing a deed or other written agreement, the "master rule" is that the intent of the parties governs. *Kipp v. Chips Estate*, 169 Vt. 102, 105,

732 A.2d 127, 129 (1999) (internal quotations omitted). In discerning the intent of the parties, the court must consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible. *Id.* The court may consider "limited extrinsic evidence of 'circumstances surrounding the making of the agreement' in determining whether the writing is ambiguous," which is a question of law subject to de novo review. *Id.* at 107, 732 A.2d at 131 (quoting *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988)). Ambiguity exists if the extrinsic evidence, in combination with the writing, "supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable." *Id.* If the court determines that a writing is not ambiguous, the plain meaning of the language controls without resort to rules of construction or extrinsic evidence. *Id.* On the other hand, if the court determines that the writing is ambiguous, interpretation of the parties' intent becomes a question of fact to be determined based on all of the evidence — not only the language of the written instrument, but also evidence concerning its subject matter, its purpose at the time it was executed, and the situations of the parties. *Mann v. Levin*, 2004 VT 100, ¶ 17, 177 Vt. 261, 861 A.2d 1138.

¶ 8. Here, Main Street first argues that the trial court erred in concluding that the deed is ambiguous with respect to the parties' parking rights. Main Street asserts that, considering the deed as a whole, it is not possible to read subparagraph two as requiring that a structure be built within 300 feet of the McKenzie building to trigger defeasance of Lake Street Association's right to sixty-five free parking spaces. In support of this contention, Main Street points out that subparagraph two makes no reference to either the proximity of the parking structure or the city's zoning regulations re-

garding the proximity of required parking. According to Main Street, subparagraph one's inclusion of a 300-foot parameter for parking spaces demonstrates that the parties to the conveyance knew how to provide for a proximity limitation but intentionally omitted such a restriction in subparagraph two with respect to the parking structure. In Main Street's view, because the language of the deed is unambiguous, the court erred by resorting to extrinsic evidence to infer the intent of the parties.

¶ 9. We find this argument unavailing because the record supports the trial court's determination that the relevant deed language is ambiguous. As discussed above, the trial court was entitled to examine the circumstances surrounding the subject conveyance in determining whether the deed was ambiguous. The court determined that the deed was ambiguous after finding that, at the time the deed was negotiated: (1) the city zoning ordinance required parking to be located within 400 feet of the property; (2) without such parking, the property would be subject to losing its zoning permit, and the owner would have been unable to rent space to its commercial tenants, making the property worthless; (3) strong incentives existed for both the grantor and the grantee to assure that suitable parking was provided — the need to satisfy the city's development regulators and the desire to make the property commercially viable; (4) the grantor had detailed plans to build a parking structure within 300 feet of the building; and (5) the purchase-and-sale agreement explicitly required the grantor to provide sixty-five parking spaces free of charge until a parking structure was built within 300 feet of the building.

¶ 10. Given these circumstances, the trial court did not err in determining that the deed was ambiguous as to whether availability of spaces in a parking structure located within 300 feet of the

McKenzie building was required before the grantor could revoke the grantee's parking rights. Although no such limitation is explicit in subparagraph two of the deed's parking provision, the provision's reference to the city's zoning regulations (albeit with respect to the number of spaces required) and its language requiring the grantor to provide sixty-five parking spaces within 300 feet of the building suggest, at least as one reasonable interpretation of the deed, that subparagraph two was intended to address only the charging of rent for parking in the event a garage was built, but was not intended either (1) to disturb the 300-foot parameter set forth in subparagraph one in compliance with the zoning permit, or (2) to allow the grantor to terminate the grantee's parking rights by providing parking spaces in a garage located outside the parameters required by the zoning regulations. Indeed, the fact that Main Street did not seek to impose its interpretation of the deed on Lake Street Association until several years after the Union Station garage was built supports the court's conclusion that the deed's parking provision is ambiguous.

¶ 11. Main Street argues, however, that the trial court erred by resorting to extrinsic evidence to read into the deed a provision that the parties had deleted from an earlier draft of the deed. At trial, Main Street produced a draft in which subparagraph two explicitly provided that the grantor could require the grantee to relinquish the sixty-five parking spaces if a parking structure was included "within 300 feet of the Premises." Ironically, in challenging the trial court's reliance on extrinsic evidence to determine the parties' intent, Main Street itself relies on extrinsic evidence and rules of construction to support its view of what the parties intended. We agree with the trial court that the earlier draft deed did not overcome other evidence indicating that the parties intended to authorize revocation of the grantee's parking rights only upon construction of a parking structure within 300 feet of the McKenzie building. Main Street has not provided a coherent reason why the 300-foot limitation would have been intentionally removed from the deed. Further, the evidence at trial did not show that the grantee had ever seen the earlier deed draft, let alone that omission of the 300-foot limitation in subparagraph two of the final deed was negotiated and done intentionally. Main Street's witness could testify only that the deed draft was found in a file, and that, more probably than not, it was sent to the grantee. In short, evidence of the deed draft was insufficient to overcome significant other evidence that the parties did not intend to allow the grantor to revoke the grantee's parking rights upon construction of a parking structure outside the 300-foot parameter set forth in the purchase-and-sale agreement and subparagraph one of the deed. Nor do we find significant the grantee's execution of a document acknowledging that execution and delivery of the deed discharged the grantor of its obligations under the purchase-and-sale agreement. The grantee's acknowledgment only begs the question as to the meaning of the ambiguous deed language.

¶ 12. Finally, Main Street argues that the trial court erred in rejecting the parties' demonstrated intent by finding that intent to be illogical. Main Street is referring to the court's conclusion that, under the circumstances surrounding the agreement, it would not have made any sense for the deed to ignore the required proximity of parking spaces, given the problems that would ensue with city administrators. Again, we find this argument unavailing. The court did not err by considering what was reasonable under the circumstances in determining which of two competing interpretations was intended by an ambiguous deed

provision. See Restatement (Second) of Contracts § 203(a) (1981) (recognizing that interpretation of agreement that "gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

*Affirmed.*