# CIRCUIT COURT OF FAIRFAX COUNTY

Colleen K. Hughes,
individually and
as personal representative of
David J. Gorman

v.

Eugene J. Bransfield

January 11, 2012

Case No. CL 2011-13180

By JUDGE MICHAEL F. DEVINE

This matter came before the Court on December 9, 2011, on the Defendant's Demurrer to all three counts of the Complaint. The Plaintiff claims that the Defendant's refusal to accept an early termination of a residential lease and to return the security deposit violated the Virginia Fair Housing Act ("VFHA"), Virginia Code § 36-96.1 *et seq.*, (Count I); the federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. 3601 *et seq.*, (Count II); and the Virginia Residential Landlord and Tenant Act, Va. Code § 55-248.2 *et seq.*, (Count III). Upon consideration of the pleadings, the arguments of counsel and the applicable governing authorities, the Court overrules the demurrer.

*Background*

On demurrer, all factual allegations in the complaint are taken as true. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447,

449 (2006). The court may also consider the facts alleged in light of any documents attached to the pleadings. *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Accordingly, the facts for purposes of resolving the demurrer are as follows.

On September 22, 2010, Colleen Hughes and David Gorman (the "Tenants") entered into a residential lease with the Defendant, Eugene J. Bransfield (the "Landlord"). The lease term began October 1, 2010, and expired on September 30, 2011. The monthly rent was $1,900, and a security deposit of $1,900 was paid in advance. Complaint ¶ 6-8. During the lease period, Mr. Gorman was diagnosed with stage IV non-small cell lung cancer. Due to this illness, he was unable to climb the stairs to the apartment. Complaint ¶ 11 and Exhibit 2. By June 15, 2011, the Landlord was aware that the Tenants sought an early termination of the lease. On that date, the Landlord sent the Tenants an e-mail message stating that the current lease would remain in full force and effect until the end of the lease term and that he was expecting to be paid the rent due on July 1, 2011. Complaint ¶ 13. On June 16, 2011, the Tenants provided the Landlord with a letter from a doctor verifying Mr. Hughes' illness and resulting inability to climb the stairs to the apartment. Complaint ¶ 14 and Exhibit 2. The Complaint does not state the specific date on which the Tenants vacated the premises. A final inspection of the apartment was conducted by Ms. Hughes and the Landlord on July 1, 2011. Ms. Hughes and Mr. Gorman paid all rents due under the lease in full. The security deposit was never returned.

## Analysis

A demurrer tests the legal sufficiency of a pleading and should be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. Va. Code § 8.01-273; *see Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005). Only matters stated on the face of the pleading demurred to or attached as an exhibit may be reached by demurrer, unless otherwise demanded by the demurrant or agreed to by the parties. *Faulknier v. Shafer*, 264 Va. 210, 215, 563 S.E.2d 755, 758 (2002).

A. *Claims under the Virginia Fair Housing Act and the Federal Fair Housing Act*

The Defendant Landlord makes similar arguments in his demurrer to Count I, the claim under the Virginia Fair Housing Act, and Count II, the claim under the federal Fair Housing Amendments Act. First, the Defendant argues that both counts should be dismissed because the Complaint fails to allege that the Defendant owns the requisite number of single family houses to subject him to the requirements of either act. The Defendant next

argues that the acts alleged are not discriminatory under either the Virginia or federal act, and that he is not required to allow a unilateral termination of the lease as an accommodation. Lastly, the Defendant argues that Ms. Hughes does not have an individual claim under either the state or federal act because she is not handicapped. The Court will address each of these arguments in turn.

### 1. *Failure To Allege the Number of Houses Owned by the Defendant*

The VFHA and the FHAA exempt from their respective provisions private individuals who own three or fewer single-family homes. *See* Virginia Code § 36-96.2(A) and 42 U.S.C. § 3603(b)(1). Both acts are silent as to whether a plaintiff must allege facts to show that the exemption does not apply to a defendant or whether a defendant must claim an exemption as an affirmative defense.

In determining the intent of the General Assembly and the Congress in this regard, the Court first considers the purpose of each act. The VFHA includes a declaration of policy, as follows:

> It is the policy of the Commonwealth of Virginia to provide for fair housing throughout the Commonwealth, to all its citizens, regardless of race, color, religion, national origin, sex, elderliness, familial status, or handicap, and to that end to prohibit discriminatory practices with respect to residential housing by any person or group of persons, in order that the peace, health, safety, prosperity, and general welfare of all the inhabitants of the Commonwealth may be protected and insured. This law shall be deemed an exercise of the police power of the Commonwealth of Virginia for the protection of the people of the Commonwealth.

Va. Code § 36-96.1(B). "It is hard to envision a more emphatic expression of a desire to use the full police power of the state to outlaw sexual, racial, and other types of invidious discrimination to the maximum extent possible under the law." *Allen v. Seventy-Seven Acres*, 48 Va. Cir. 318 (1999). Likewise, the FHAA also includes a declaration of policy, which states: "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Congress thus intended to bar housing discrimination to the maximum extent of its constitutional powers.

Second, the Court considers that many victims of discrimination likely would not know or have any readily available way of determining whether a private individual landlord owns more than three single-family homes. If a plaintiff were required to affirmatively plead the number of houses owned by a private landlord in order to state a claim, the plaintiff would need to

undertake an extensive, tedious, and costly investigation of this fact or be barred from filing a complaint by federal and state rules of civil procedure that require a good faith basis for the factual allegations contained in a complaint. *See* Rule 1:4(a) of the Rules of the Supreme Court of Virginia; F.R.C.P. 11(b)(3). By contrast, an individual defendant would immediately know whether he or she falls within the exemption to the state and federal acts and could easily assert such as a defense at a comparatively small cost.

Lastly, the relevant provisions of the state and federal acts are identified as "exemptions," which are generally claimed by the person entitled to them. It strains logic and reason that exemptions to a statute must be affirmatively negated in a complaint. All of the relevant statutes were drafted to protect the rights of tenants. Interpreting the VFHA and the FHAA to require a plaintiff to plead that a defendant landlord does not meet any of the exemptions to the statutes would erect a barrier that would significantly hinder victims of discrimination in seeking relief. This result would be inconsistent with the statement of policy contained in each act. Therefore, the Court holds that Ms. Hughes is not required to plead facts sufficient to defeat exemptions to any of the statutes. Of course, the Defendant remains free to raise any exemption to which he is entitled as an affirmative defense as this litigation proceeds.

## 2. *The Discriminatory Nature of the Refusal To Allow Early Termination*

The Plaintiff alleges that the Defendant Landord's refusal to allow early termination of the lease amounts to a failure to accommodate Mr. Gorman's disability and is thus unlawful discrimination under both the VFHA and the FHAA. The Landlord claims in his demurrer that allowing a tenant to unilaterally terminate a lease is not within the accommodations required by either act. Thus the Court is presented with two issues: (1) whether early termination of a lease can be considered a "term, condition, or privilege" of the lease, and (2) if so, does a refusal to allow early termination of a lease interfere with a handicapped person's opportunity to "use and enjoy" housing.

The FHAA makes it unlawful:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
    (A) that buyer or renter,
    (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
    (C) any person associated with that buyer or renter.
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services

or facilities in connection with such dwelling, because of a handicap of

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

42 U.S.C. § 3604(f)(1) and (2). "Discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Making a reasonable accommodation means taking "affirmative steps . . . to change rules or practices if [such steps] are necessary to allow a person with a disability an opportunity to live in the community." *Horizon House Developmental Servs., Inc. v. Township of Upper Southampton*, 804 F. Supp. 683, 699 (E.D. Pa. 1992), aff'd mem., 995 F.2d 217 (3d Cir. 1993). This includes "changing some rule that is generally applicable to everyone so as to make its burden less onerous on the handicapped individual." *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 462, n. 25 (D. N.J. 1992); *see Alliance for the Mentally Ill v. City of Naperville*, 923 F. Supp. 1057, 1078 (N.D. Ill. 1996). The VFHA contains nearly identical language imposing the same requirements as the FHAA. *See* Va. Code § 36-96.3(A)(8); § 36-96.3(B).

In *Samuelson v. Mid-Atlantic Realty Co.*, 947 F. Supp. 756 (D. Del. 1996), a federal district court considered a nearly identical claim under the FHAA based on failure to terminate a lease due to a tenant's serious illness. The Court held:

[I]t is beyond cavil that the manner in which a rental agreement can be terminated constitutes a term, condition, or privilege of the rental agreement itself. The FHAA contemplates that events associated with the departure of a tenant are conditions of a rental agreement. For example, the FHAA allows an agreement by a tenant to restore the interior of the premises to the condition that existed before reasonable architectural modifications. 42 U.S.C. § 3604(f)(3)(A). The regulations also provide that a landlord may not impose higher security deposits on handicapped tenants. 24 C.F.R. § 100.203(a). Keeping in mind a lease is a contract, the duration of the contract and how the obligations of a party under the contract can be fulfilled are terms of the contract itself.

*Id.* at 761. The Court also held that a refusal to allow early termination could be considered a failure to reasonably accommodate a handicapped person in a manner necessary to afford such person equal opportunity to use

the dwelling and therefore could constitute unlawful discrimination under the FHAA. *Id.* at 761-62. The court recognized that requiring disabled individuals to pay generally applicable fees can interfere with the use and enjoyment of housing by the handicapped. *Id.* at 761. The court also observed that the FHAA should be given a "generous construction." *Id.* at 762, citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995). The court believed that a more restrictive reading of "terms, conditions, or privileges" and "use and enjoy" in the FHAA would undermine Congress' stated purposes and allow landlords to easily evade the law's requirements. *Id.* at 762.

In the case before this Court, Ms. Hughes has alleged that Mr. Gorman was terminally ill, could not use the stairs to reach his apartment, and, despite this handicap, was refused an early termination of his lease. The Landlord claims the Tenants did not request early termination of the lease, but rather the Tenants unilaterally abandoned the property and then requested termination. The Tenants paid rent through the end of June 2011, and the landlord conducted a final inspection of the property on July 1, 2011. Granting the plaintiff the benefit of all permissible inferences, the Court finds for purposes of this demurrer that Ms. Hughes and Mr. Gorman remained in possession of the property throughout June 2010. The Tenants' request for termination was refused on June 15, 2011, while the Tenants remained in possession of the property. Thus they did not act unilaterally, but instead requested an early termination. Paragraph 26 of the lease, which was attached to the Complaint, contemplates early termination of the lease with the Landlord's written approval.

This Court agrees with and adopts the reasoning of the federal court in *Samuelson*. As in that case, the Landlord here has applied a generally applicable policy in a manner that could constitute unlawful discrimination. These facts are sufficient to state a claim under the FHAA and the VFHA.

### 3. Plaintiff's Individual Cause of Action

The Defendant further argues that Ms. Hughes does not have an individual claim under the FHAA or the VFHA because she is not handicapped. During the term of the lease in this case, Ms. Hughes was married to, and resided with, Mr. Gorman who was handicapped. Both the VFHA and the FHAA make it unlawful to discriminate against a person based upon the handicap of a person with whom they reside or who is associated with the renter. Va. Code § 36-96.3(A)(8); 42 U.S.C. § 3604(f)(1)(B) and (C); § 3604(f)(2)(B) and (C). Consequently, Ms. Hughes has an individual claim under the VFHA and the FHAA because she resided with Mr. Gorman, who was handicapped, and also because she was a renter who was associated with a handicapped person.

For the foregoing reasons, the Court overrules the demurrer to Count I and Count II of the Complaint.

## B. *Virginia Residential Landlord and Tenant Act*

In Count III of the Complaint, the Plaintiff seeks return of the security deposit under the Virginia Residential Landlord and Tenant Act ("VRLTA"). She alleges that the Defendant Landlord failed to provide an itemized list of damages and charges and failed to return the security deposit within the time period specified in the Act. While the VRLTA allows a landlord to withhold the security deposit for rents due, the landlord must also itemize any damages and charges within forty-five days after the termination of the tenancy. Va. Code § 55-248.15:1. Failure to provide this itemization authorizes the Court to order the return of the funds:

> If the landlord willfully fails to comply with this section, the court shall order the return of the security deposit and interest thereon to the tenant, together with actual damages and reasonable attorneys' fees, unless the tenant owes rent to the landlord, in which case, the court shall order an amount equal to the security deposit and interest thereon credited against the rent due to the landlord.

Va. Code § 55-248.15:1.

It is alleged that the Tenants paid the rent due under the Lease in full, a final inspection of the property was conducted on July 1, 2011, and no itemized statement of damages was provided. Plaintiff further alleges that the Defendant Landlord's failure to comply with the VRLTA was willful. The Court therefore finds that the Plaintiff has stated a claim for return of the security deposit under the Virginia Residential Landlord Tenant Act.

## Conclusion

For the reasons stated above, Defendant's demurrer is overruled on all counts.