STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
|---|---|
| Vermont Unit | Docket No. 150-10-14 Vtec |

| Wagner & Guay Permit | DECISION ON MOTION |
|---|---|

William and Barbara Wagner and Christopher Guay (Applicants) seek to construct a single family home on lots 3 and 4 of a previously approved six-lot subdivision (the Project) located on Dodge Terrace in the Town of Grand Isle, Vermont (the development). Mary Bourassa (Appellant) resides in a single family home located on lot 2 of the development. On October 1, 2014 the Town of Grand Isle Development Review Board (DRB) granted Applicants' zoning permit. On October 14, 2014 Appellant timely appealed the DRB's decision to this Court, filing a Statement of Questions consisting of 9 Questions.

On December 22, 2014 Applicants filed a Motion to Dismiss Appellant's Questions 1, 3, 4, 6, 8, and 9. On January 5, 2015, Appellant filed a Motion to Stay the appeal before this Court pending resolution of a civil complaint in the Chittenden Unit of the Vermont Superior Court (docket number 1276-12-14 Cncv), seeking a declaratory judgment as to the interpretation of covenants and restrictions in the deeds for lots 2, 5, and 6, and raising claims of fraud and breach of contract against the Wagners relative to those covenants and restrictions. On March 27, 2015, this Court denied Appellant's motion to stay the appeal, and on April 2, 2015 this Court granted Applicants' motion in part and denied it in part, dismissing Appellant's Questions 1, 3, 4, and 6. Appellant now moves for judgment in her favor on Question 2. Applicants oppose that motion and move for summary judgment in their favor on all Questions remaining before the Court, Questions 2, 5, 7, 8, and 9.

## Factual Background

For the sole purpose of putting the pending motion into context the Court recites the follow facts which it understands to be undisputed:

1.      Applicants Philip and Barbara Wagner own lots 3 and 4 of the six-lot subdivision on Dodge Terrace in the Town of Grand Isle, Vermont.

2.      Appellant Mary Bourassa owns and resides at lot 2 of the six-lot subdivision on Dodge Terrace.

3.      The Wagners seek to sell lots 3 and 4 to Christopher Guay for the purpose of adjusting the lot line to create a single lot and building a single family residence thereon.  The location of the proposed residence is depicted on the sketch plan accompanying his application.  The parties dispute whether the front corners of the house will be located 98 feet and 109 feet from the edge or from the centerline of Dodge Terrace.

4.      Dodge Terrace is a dead-end road running along the south edge of a large open field.  A row of trees runs parallel to the road and marks the beginning of a wooded area extending north from the road into the field (tree line).

5.      Trees and brush have continued to grow on lots 2–6 over the past 20 years, including in and around, as well as to the north of, the tree line.

6.      Note 16 of the recorded plat plan for the subdivision approved in 1995 requires that the construction of houses on lots 2–6 be within the tree line.  The tree line is clearly identified on the plat plan.

## Analysis

### I.      Summary Judgment Standard

Pursuant to Rule 56(a) of the Vermont Rules of Civil Procedure (V.R.C.P.), a party seeking summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).  When considering cross-motions for summary judgment, the court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.  The court also accepts as true all factual allegations made in opposition to a motion for summary judgment, so long as they are

supported by "specific citations to particular parts of materials in the record." V.R.C.P. 56(c)(1)(A).

II.      **Appellant's Motion**

In her motion for summary judgment, Appellant argues that she is entitled to judgment as a matter of law on Question 2 because Applicants' application is inconsistent with the subdivision plat plan, which provides that the location of houses on lots 2 through 6 must be within the tree line. Appellant contends that the location of Applicants' proposed structure, as depicted in the sketch plan, "clearly contravenes the original intent and purpose of the requirement that all construction take place within the tree line. . . ." (Appellant's Motion at 5, filed July 17, 2015). Specifically, Appellant argues that "the front of [Applicants'] proposed house would fall in front of the tree trunks . . ." and that "[t]he tree line would provide no visual screening, and the proposed construction would disrupt the scenic vistas that the tree line restriction was intended to preserve." Id.

The original subdivision application, dated August 17, 1994, indicated the Wagner's intent to plant cedar hedges along the northern boundary of lot 6 to provide a visual barrier between houses on lots 2–6 and the McNeil residence. (Appellant's Exhibit B, filed July 17, 2015). At a hearing on the application held September 20, 1994, Brian McNeil "present[ed] his concern with regard to the proposed hedgerow to screen the development from his view. . . ." (Appellant's Exhibit C, filed July 17, 2015). At a subsequent hearing on January 3, 1995, Mr. McNeil and Mr. Wagner "agree[d] to explore the possibility of changing a line of trees to be planted to shield Mr. McNeil's property from the proposed subdivision." (Appellant's Exhibit D, filed July 17, 2015). On February 21, 1995 the Grand Isle Planning Commission approved the Wagner's application. On April 4, 1995, the Commission approved the final plat plan, which was dated January 3, 1995.

As illustrated on the final plat plan, Dodge Terrace runs approximately east from Lovers Lane, with lots 2–4 and 6 on the northern side of the road. The line boundary on lots 3 and 4 is represented as varying between approximately 60 and 100 feet north of the center line of Dodge Terrace. The houses are depicted to the north of the tree line, but the plat notes that

3

"[t]he position of all houses and driveways are for illustrative purposes only," and that the "[a]ctual locations may be selected by the lot owner, as long as all applicable regulations, standards, and codes are met, with provision that the houses for lots 2–6 must be within the tree line." (Appellant's Exhibit 2, filed July 17, 2015).

According to the sketch plan accompanying the application, Applicants' propose to construct a single family residence approximately 100 feet to the north of the center line of Dodge Terrace and approximately 50 feet south of the wetland setback. (Appellant's Exhibit 3, filed July 17, 2015). Appellant offers a survey conducted by Richard Hamlin, a professional engineer and land surveyor, depicting the tree line and Applicants' proposed single family home. The survey is based on the plat plan, the location of individual old-growth tree trunks along the historic edge of the cleared field, and information provided in the sketch plan.

Based on Mr. Hamlin's survey, Appellant contends that the tree line on the plat plan "does not accurately depict the true location of the trees" and that the proposed house extends several feet outside the actual tree line." (Appellant's Exhibit 3 at ¶¶ 10–11, filed July 17, 2015). Appellant further contends that new tree growth extending into the field north of the old-growth tree line does not afford screening equivalent to that provided by the old-growth trees. Id at ¶ 12. Appellant therefore argues that "[s]iting the front of the proposed house to the north of the old-growth tree trunks that originally demarcated the edge of the open field would be contrary to the purpose and intent of the requirement that construction occur 'within the tree line,' because there would be no visual screening being afforded by the original old growth trees." Id at ¶ 13.

In considering Appellant's motion for summary judgment on Question 2, we must view the undisputed facts in the light most favorable to Applicants. Based on Appellant's exhibits and affidavits, including Mr. Hamlin's field survey, the Court cannot definitively say whether the application is inconsistent with the requirement that the location of houses on lots 2 through 6 be within the tree line. Appellant has argued that the plat plan does not accurately depict the tree line and that the location of the proposed structure will not provide adequate screening. It is unclear from the record, however, which trees make up the tree line, the location of Applicants' proposed residence relative to both the old-growth trees along Dodge Terrace and

4

the new-growth trees to the north of those trees, and whether either the old or new-growth trees provide adequate screening of the proposed structure from Mr. McNeil's property. As such, we cannot conclude that the application fails to comply with the requirement in note 16. Thus, Appellant is not entitled to judgment as a matter of law, and Appellant's motion for summary judgment is therefore **DENIED**.

### III. Applicants' Motion

In their motion for summary judgment, Applicants argue that they are entitled to a judgment as a matter of law on Questions 2, 5, 7, 8, and 9. Taken together, Questions 2 and 5 address both the location of the tree line established in note 16 of the plat plan and whether the proposed single family home is within that tree line. Question 7 asks whether the application should be denied under Grand Isle Zoning Bylaws and Subdivision Regulations (Bylaws) § 5.10. Questions 8 and 9 ask whether the application should be denied because Applicants made multiple material misrepresentations of fact in connection with their application, and whether Appellant should be awarded legal fees and costs as a result of any misrepresentations.

### A. Question 5

Applicants contend that the location of the tree line is defined by the plat plan and that Appellant's challenge to the accuracy of the plat plan amounts to a collateral attack on the final and binding subdivision approval. Applicants further contend that as proposed, the house is within the tree line as depicted on the plat. Our analysis begins with the importance of the basic premise of finality in land use litigation. It is the function of a subdivision permit "to approve plats of land," and for this reason, "recorded plats necessarily become permit conditions." In re Stowe Club Highlands, 164 Vt. 272, 276 (1995) (internal quotation and citations omitted). The failure to appeal a permit condition binds successors in interest. See 24 V.S.A. § 4472(d); In re Hildebrand, 2007 VT 5, ¶ 3, 181 Vt. 568.

In approving the final plat plan submitted by the Wagners, the DRB relied upon the plat as submitted. The location of the tree line as referenced in the approved and recorded plat plan is therefore a condition of the subdivision permit. As surveyed by Appellant, however, the

5

existing tree line is located farther north from Dodge Terrace than as represented on the plat plan.

In construing permit conditions, the Court relies on the normal rules of statutory construction. See Main Street Landing, LLC v. Lake Street Assoc., Inc., 2006 VT 13, ¶ 7, 179 Vt. 583, 585. It is our principal concern to implement the intent of the drafters, which we ordinarily determine by accepting the plain meaning of the words. Agency of Natural Resources v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573 (citing Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters., 163 Vt. 476, 481 (1995)). Because land use regulations are in derogation of property rights, any uncertainty must be decided in favor of the property owner. Id.

With these considerations in mind, we examine the plat plan. On the plat, the tree line is represented by a scalloped line north of and parallel to Dodge Terrace. On Appellant's 2015 survey, the scalloped line is superimposed over depictions of the individually surveyed mature trees, which are farther north into the field from Dodge Terrace. Question 5 asks whether the location of the tree line is defined by the plat plan or by the surveyed location. Applicants have not disputed the accuracy of the 2015 survey; rather, they dispute whether the tree line must be defined as indicated on the unappealed plat plan.

Applicants are correct when they argue that the plat plan is a final and binding condition of the subdivision permit. The Court cannot, however, ignore that the existence and location of the trees are facts, whereas the plat offers a description that serves to assist the viewer in ascertaining those facts. As such, it is the trees themselves that define the tree line, whether they correspond with the plat or not. An error in the plat as to the location of the trees then in existence does not relieve Applicants from the final and binding condition that their building must be built with the tree line.

Although the tree line as depicted in the plat may be based on an incorrect representation, additional conditions established by the plan shed light on the drafters' intent. Specifically, note 16 establishes a condition that development on lots 2–6 to be within the tree line. The DRB noted this condition in the minutes of its 1995 hearings on the application and relied upon it in approving the plat and subdivision permit. It is clear from the plain language of note 16 that development must take place within the tree line. It is also clear from the minutes

6

of the hearings on the subdivision application that the original parties intended this requirement to provide a visual barrier between the houses on lots 2–6 and the McNeil residence. (Appellant's Exhibit B, filed July 17, 2015). As noted above, Brian McNeil's "concern with regard to the proposed hedgerow to screen the development from his view . . ." prompted Mr. Wagner to "agree to explore the possibility of changing a line of trees to be planted to shield Mr. McNeil's property from the proposed subdivision." (Appellant's Exhibit C & D, filed July 17, 2015).

Although the tree line as depicted in the plat may be inaccurate, when read in conjunction with note 16 and the hearing minutes, it is clear that the drafters' intent was to ensure that any development on the lots 2–6 be within the tree line so as to provide screening from the McNeil property. Said in a different way, in order to comply with note 16, the trees must provide screening of any development on lots 2–6. It is therefore illogical to require the houses on lots 2–6 to be built within an imaginary line represented on the plat plan, by error or carelessness, rather than within an actual line represented by the trees themselves. As the location of the tree line is disputed by the parties, Applicants' motion for summary judgment on Question 5 is **DENIED**.

**B. Question 2**

Question 2 asks whether the application must be denied as inconsistent with the plat plan, which requires that houses on lots 2 through 6 be within the tree line. Applicants dispute Appellant's statement of undisputed material fact as it relates to the location of the proposed house. Specifically, they contend that the front corners of the proposed house will be located 98 feet and 108 feet from the edge of the traveled way of Dodge Terrace, rather than from the centerline as indicated in Appellant's statement of facts.

Although Applicants admit that the measurements on the sketch plan accompanying the application show the setback distances from the centerline of Dodge Terrace, they provide that "later statements to the DRB indicate measurements were from the edge of the travelled right of way . . ." (Applicants' Statement of Undisputed Material Facts at ¶ 5, filed Aug. 18, 2015). Applicants do not, however, support this allegation in opposition to Appellant's motion for summary judgment with specific citations to particular parts of materials in the record, as

7

required by V.R.C.P. 56(c)(1)(A). Even after undertaking a search of the record on its own accord the Court is unable to find any support for Applicants' statement. The version of the application before the Court includes a sketch plan with the setbacks measured from the centerline, and not from the edge of the travelled way. The Court must therefore determine that the location of the proposed house is disputed. Applicants' motion for summary judgment on Question 2 is therefore **DENIED**.

**C. Question 7**

Question 7 asks whether the application should be denied under Grand Isle Zoning Bylaws and Subdivision Regulations (Bylaws) § 5.10. Section 5.10 requires a full subdivision hearing process if a proposed boundary adjustment "substantially change the nature of the development or create new lots." Bylaws § 5.10. Applicants argue that the proposed boundary adjustment will not substantially change the development or create new lots because it will result in the consolidation of lots 3 and 4 into a single lot. Although it is clear that the proposed adjustment would not create a new lot, the Court finds unpersuasive Applicants' argument that the creation of a single 6.56 acre lot from two smaller lots will not substantially change the development. We require more evidence and testimony on the effects of such an adjustment before rendering a conclusion on the matter. Applicants' motion for summary judgment on Question 7 is therefore **DENIED**.

**D. Questions 8 & 9**

Questions 8 and 9 ask whether the application should be denied because Applicants made multiple material misrepresentations of fact in connection with their application, and whether Appellant should be awarded legal fees and costs as a result any misrepresentations. As discussed above, Applicants have referenced a version of the application that was not provided to the Court in this appeal. The Court is unable to make a determination on the issues raised in Questions 8 and 9 without that version of the application. Applicants' motion for summary judgment on Questions 8 and 9 is therefore **DENIED**. The Court does note, however, that we are generally not concerned with alleged inaccuracies in materials presented to the municipal panel below as this is a de novo hearing. Nor is the Court likely to award legal fees

absent a statutory authorization or such an award or conduct that rises to the level of an intentional abuse of the legal process.

### Conclusion

For the reasons stated in greater detail above, neither party is entitled to summary judgment. Because the Court cannot definitively say whether the application is inconsistent with the requirement that the location of houses on lots 2 through 6 be within the tree line, Appellant's motion for summary judgment on Question 2 is **DENIED**. Further, because there is a dispute of material fact as to the location of the proposed house relative to Dodge Terrace, Applicants' motion for summary judgment on Questions 2 and 5 is **DENIED**. Finally, the Court requires further evidence and testimony on the effects of the boundary adjustment and alleged inaccuracies in the application, and for this reason, Applicants' motion for summary judgment on Questions 7, 8, and 9 is **DENIED**. Questions 2, 5, 7, 8, and 9 remain for trial which is scheduled for September 21 and 22, 2015.

Electronically signed on August 27, 2015 at 03:23 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division