Filed 01/23/26

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-01765

---

**Windham & Windsor Housing Trust, Inc. v. D.D. Hale**

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND
## ORDER

A final hearing in this ejectment action was held on November 4, 2025, at the Windham Criminal and Family Division courthouse in Brattleboro. Plaintiff Windham & Windsor Housing Trust, Inc., was represented by Attorney Samantha L. Snow. Defendant D.D. Hale appeared and was represented by Attorney Zoe E. Cunningham-Cook. Plaintiff presented testimony from Edward Bordas, Sue Rousse, Krystal Crandall, Steven Nelson and Elizabeth Lachapelle. Defendant testified. A number of exhibits were admitted. This order resolves Plaintiff's claims and Defendant's counterclaims in this matter.

Post-hearing memoranda were filed with the court on November 18, 2025.

1. Procedural History[1]

Plaintiff filed the complaint in this matter on May 6, 2024. Attached to the complaint were various exhibits including the lease, Windham & Windsor Housing Trust Residents' Handbook, and Notice of Termination. Service was made on Defendant on May 10, 2024. Defendant timely filed an answer on May 21, 2024.[2] The matter was set for a final hearing on November 4, 2024. On October 31, 2024, Plaintiff filed a motion to continue "for a period of not less than sixty (60) days. The defendant has requested a Reasonable Accommodation, which included, among other accommodations, a continuance of the trial now scheduled for November 4, 2024." See Motion. Plaintiff noted that Defendant did not object to the continuance. The court granted the motion that same day. The matter was then set for a final hearing on January 21, 2025. On January 17, 2025, Defendant requested a continuance on various grounds including that "he has requested a reasonable accommodation from the Plaintiff, and Plaintiff has not engaged in the interactive process required of it by law." See Motion. The motion was denied as moot because a previously filed motion regarding the location of any final hearing had been granted which necessitated rescheduling. On Jun 17, 2025, the matter

---

[1] The court relies on its own records in making these findings regarding the relevant procedural history in this matter. Any objection to these findings must be filed in writing within five days of this order. V.R.E. 201(e).

[2] An amended answer was filed on January 15, 2025. A further amended answer and a counterclaim was filed on April 9, 2025.

was set for a final hearing on July 14, 2025. An agreed motion to continue was filed and granted on June 27, 2025. On August 12, 2025, a final hearing was set for November 4, 2025, in Brattleboro. On October 15, 2025, Defendant moved to continue the final hearing again. This court denied the motion noting "the hearing on the merits of this matter has been repeatedly rescheduled. Scheduling Civil Division hearings in Brattleboro presents additional complications given the needs for hearings in other Divisions in that courthouse. The request for yet another continuance is unreasonable." See Entry Regarding Motion dated October 15, 2025.

2. Findings of Fact[3]

Defendant D.D. Hale presently lives with his 13-year-old daughter Max at 9 Canal Street, Unit # 205, in Brattleboro. They had previously lived at 48 Clark Street. Defendant receives SSI. Defendant has Postural Orthostatic Tachycardia Syndrome (POTS) for which he takes medication. Defendant has been diagnosed with depression, anxiety and chronic post-traumatic stress disorder (C-PTSD). Defendant acknowledges that his conditions make it difficult for him to keep the apartment clean.

On May 8, 2023, Defendant entered into a lease with the Windham & Windsor Housing Trust to rent the apartment at 9 Canal Street. The unit is upstairs from the Brattleboro Food Co-Op. Rent for the unit was $ 1,236.00 a month.

Various provisions of the lease are relevant to this proceeding. Pursuant to paragraph eight of the lease,

> The resident handbook and house rules set forth in that handbook are expressly made part of this lease and tenant agrees to abide by such handbook and house rules. Breach of this resident handbook and house rules shall be a default under this rental agreement.

See Exhibit # 1. Pursuant to paragraph 11

> Landlord may terminate the tenancy for failure of the tenant to comply with a material term of this rental agreement or with tenant's obligations under 9 VSA 4451 et seq., by actual written notice given to tenant at least 30 days prior to the termination date specified in the notice.

*Id*. Pursuant to paragraph 12.A, "Tenant shall keep and maintain the unit in a clean and sanitary condition at all times .... Tenant agrees to place garbage and trash in the area provided for rubbish removal, and to transfer that trash - once a week - to the street for town pick-up." *Id*. Pursuant to paragraph 14

> If suit is brought by Landlord to enforce the terms hereof or to recover the unit or to recover any monies due under the provisions of this agreement,

---

[3] Based on the credible admissible evidence adduced at the hearing, the court makes the following findings of fact by a preponderance of the evidence.

or for any obligation of Tenant arising under this agreement or by law, then Tenant hereby agrees to pay Landlord all the costs in connection therewith, including, but not limited to, reasonable attorney's fees, whether or not the action or actions proceed to judgment.

*Id.* Pursuant to paragraph 18

This rental agreement and the resident handbook and house rules referenced herein constitute the entire agreement between the parties. This rental agreement cannot be changed orally, and any change, amendment or modification must be in writing and approved by landlord and tenant.

*Id.* Pursuant to the house rules

Residents shall conduct themselves, and require other people who are in their apartment and yard with their consent, to conduct themselves in a manner which does not disturb other residents' peaceful enjoyment of the premises, disturb neighbors, or constitute a breach of the peace.
...

Certain pets (such as cats, fish, and small rodents) are allowed as long as they do not disrupt the peace, or harm the condition of the building and grounds, but WWHT reserves the right to decide whether or not a resident's pet may be kept on the premises. You must get permission for any and all pets when you sign your rental agreement. If you want to get any pets after you first move in, you must get written permission from WWHT. Any unauthorized pets found in a unit will be required to be removed immediately, and a fine may be charged until they are removed.

Only neutered/spayed cats are allowed in WWHT buildings. Proof of neutering is required prior to occupancy. Residents wishing to keep pets pay a $50 deposit. This deposit is kept in an interest-bearing account. Damages caused by pets are repaired with funds from this account and owners whose pets are responsible for damages must reimburse this account in the amount of the damages.

People with complaints about pets should address them to WWHT. WWHT will then meet with the pet owners to discuss conditions under which the pet shall be allowed to remain in the building.

See Exhibit # 3.

Defendant also entered into two pet agreements with Plaintiff on May 9, 2023. The first agreement related to two cats.[4] Pursuant to the agreement, "certain pets ... are allowed

---

[4] Defendant testified – and the court finds – that one of the cats is an emotional support animal.

as long as they do not disrupt the peace, or harm the condition of the building and grounds, but WWHT reserves the right to decide whether or not a resident's pet may be kept on the premises." See Exhibit # 4. The agreement included additional conditions including:

> No resident will be allowed to keep a pet temporarily, i.e., taking care of pets for friends or family while they are on vacation, etc. *without prior, written and explicit permission.*
> ...
> Pet owners are responsible for the behavior of their pets, especially in terms of the pet's effect on the health and safety of other residents.
> ...
> *Pet owners are expected to maintain their apartments in a decent and sanitary condition.* Litter boxes, food bowls, etc., are to be maintained regularly. Pet waste is to be disposed of in a proper and sanitary manner. Periodic inspections will be conducted to ensure that sanitary standards are being met.
>
> Kitty litter is to be changed regularly to remain odor free, and disposed of in the outdoor trash barrels in non-leaking plastic bags. Under no circumstances is kitty litter to be "flushed" in the toilet.
> ...
> Each pet owner must sign a pet agreement which is incorporated as part of the lease agreement. Any violation of the pet agreement is grounds for termination of the lease. Also, the pet owner agrees to supply the name, address, and phone number of one or more responsible parties who will care for the pet if the pet owner dies, is incapacitated, or otherwise unable to care for the pet.
>
> Violations of the Pet Rules shall be a violation of the conditions of the lease and resident handbook.

*Id.* (emphasis supplied). The second agreement related to Lulu – a service dog that assisted Defendant with his C-PTSD and anxiety. Similar conditions applied as part of the second pet agreement.

In February 2024 the Brattleboro Food Co-Op was flooded from above. Investigation of the incident lead Plaintiff to inspect Defendant's apartment a day or two after the flooding.[5] The inspection revealed the deplorable condition of the apartment. The odor of ammonia and cat urine was overpowering and present in common areas of the building. One of the persons involved in the inspection – Edward Bordas – had to leave the area within seven to eight minutes because of the odor. Multiple witnesses

---

[5] The court notes that no competent evidence was presented establishing that Defendant was responsible for the flood as a result of improperly disposing of kitty litter by flushing it down the toilet. However, the court does not credit Defendant's explanation for condition of the apartment – it was not credible.

4

characterized the odor as being a 10 on a scale of 1-10 with 10 being the worst odor. Inside the apartment there were multiple animals, flies and other insects, and kitty litter, trash and animal waste strewn across the floor. The number of animals far exceeded that approved by Plaintiff – more than a dozen were removed from the unit. Defendant acknowledged that the number of cats in the apartment was overwhelming. Defendant made an agreement with Krystal Crandall – the Town of Brattleboro Animal Control Officer – that he would not have additional animals in the apartment.

The odor of cat urine and ammonia cannot be eliminated from the flooring and pervades the apartment, the furniture and Defendant's clothing. The flooring will have to be replaced to eliminate the odor.

On February 7, 2024, Plaintiff provided Defendant with actual notice of for-cause termination of the lease. The notice was sent by first class and certified mail and provided for termination of the lease on March 14, 2024. Plaintiff's notice alleged

> Your tenancy is terminated for breach of your rental agreement and violation of obligations imposed under Vermont Law. Your landlord may terminate your tenancy by providing at least 30 days' actual notice, 9 V.S.A. 4467(b)(1).
>
> Your Rental Agreement requires you to "keep and maintain the unit in a clean and sanitary condition at all times and on the termination of your tenancy shall surrender the unit to Landlord in as good condition as when received...." Rental Agreement ¶ 12A.
>
> Your Rental Agreement authorizes two cats and one dog on the premises "as long as they do not disrupt the peace or harm the condition of the building and grounds ...." Resident Handbook ¶ 10C.
>
> Vermont law requires a tenant to "conduct himself or herself and require other persons on the premises with the tenant's consent to conduct themselves in a manner that will not disturb other tenants' peaceful enjoyment of the premises." 9 V.S.A. 4456(b). Tenants "shall not deliberately or negligently destroy, deface, damage, or remove any part of the premises or its fixtures, mechanical systems, or furnishings or deliberately or negligently permit any person to do so." 9 V.S.A. 4456(c).
>
> Your landlord is aware that improper disposal of kitty litter caused significant flooding and damage to your apartment and to the Brattleboro Co-Op below your apartment. Further investigation revealed over fifteen (15) cats residing in your unit, many of which were emaciated. There is a toxic smell of cat urine both in and outside of your apartment and your landlord has received several complaints about the smell. Your landlord did not consent to the additional pets in your unit.

Exhibit # 10.

On March 6, 2024, Plaintiff – through Ms. Lachapelle – provided Defendant written notice regarding the February 2024 inspection noting

> On our previous inspection on February 28, 2024, your unit did not pass the inspection.
>
> Incidents are further described as follows:
>
>> On our recent inspection of the unit, there was an abundant aroma throughout the unit of ammonia and urine.
>
> In your lease under section 12, part A. Tenants Responsibilities it states; "Tenant shall keep and maintain the unit in a clean and sanitary condition at all times,"
>
> We will be re-inspecting your unit on Thursday March 11, 2024 between 1 pm and 2 pm.

Exhibit # 7. The March inspection noted a change in the condition of the apartment but there was still animal waste and cat litter on the floor.

On February 26, 2025, Plaintiff provided tenant a notice of lease violation noting that "it ha[d] come to the attention of the Property Management team that there is an ongoing ammonia smell consuming the unit and hallway …." Exhibit # 9. A further inspection was held in 2025. Defendant was again found to have numerous cats in the apartment – far in excess of the approved number. One of the persons involved in the inspection noted that the apartment was in worse disarray in 2025 than it was in 2024 – including a closet full of trash and numerous full trash bags in a child's room. It took Defendant a long time to come to the door before this inspection. Cats were found inside a closet.

There have been further inspections since March 2025 and an improvement in the condition of the apartment has been noted.

Plaintiff has charged Defendant $ 2,296.37 for failure to maintain the unit.

Plaintiff has incurred reasonable attorney's fees of $ 3,395.00, filing fees of $ 310.00 and service fees of $ 81.70 in seeking to recover possession of the unit.

Notwithstanding the notice of termination, Defendant continues to live in the unit.

   a. Reasonable accommodation request

Sue Rousse from Windham & Windsor Housing Trust is the point person for requests for reasonable accommodations. A request was received from Defendant related to hiring a cleaner and additional inspections. The exact timing of the request is unclear, but it is certainly *after* this matter was filed. Defendant made no formal written request

6

but did ask on more than one occasion for relief he characterizes as a reasonable accommodation. Defendant has not identified a specific generally applicable term of the lease or the associated documents governing the tenancy that he seeks a relief from. However, the merits hearing in this matter was delayed as part of Defendant's request. Defendant sought and seeks dismissal as an accommodation.

3. Conclusions of Law

"Under Vermont law, a landlord 'may terminate a tenancy for failure of the tenant to comply with a material term in the rental agreement or with obligations imposed by statute, by actual notice given to the tenant at least 30 days prior to the termination date specified in the notice.'" *Emile J. Legere Management Co., Inc. v. Breed*, 2006 WL 6902439 (Vt. Super. Ct., Winds. Civ. Div. Dec. 01, 2006) (DiMauro, Supr. J.) (quoting 9 V.S.A. § 4467(b)). Plaintiff seeks eviction based on a termination for cause. Plaintiff must establish that the actions or behaviors in question occurred and that these were material breaches of the terms of the lease.

In interpreting the lease

> the "master rule" in the construction of written agreements (including written leases) "is that the intent of the parties governs." *Hall v. State,* 2012 VT 43, ¶ 21, 192 Vt. 63, 54 A.3d 993 (quoting *Main Street Landing, LLC v. Lake St. Ass'n,* 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.)). "In discerning the intent of the parties, the court must consider the written document as a whole." *Id.* "[T]he first task of the court is to determine whether the language is ambiguous, which is a question of law." *Mueller v. Mueller,* 2012 VT 59, ¶ 20, 192 Vt. 85, 54 A.3d 168. "If the contract language is ambiguous, its interpretation is a question of fact to be determined on all the evidence, including extrinsic evidence, to determine the intent of the contracting parties." *Id.* Specific contract terms control over more general terms. *See Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.,* 163 Vt. 433, 439, 658 A.2d 31, 35 (1995).

*Bisson v. Reppel*, 2015 WL 631386, at *3 (D. Vt. Feb. 12, 2015). Neither party has directed the court's attention to Vermont precedent defining a "material" breach of a term of the lease.

Defendant receives rental assistance and the tenancy is also subject to the applicable Code of Federal Regulations relating to termination of tenancy. A landlord participating in this program may only terminate the tenancy for:

> (1) Material noncompliance with the rental agreement,
> (2) Material failure to carry out obligations under any state landlord and tenant act,
> (3) Criminal activity by a covered person in accordance with sections 5.858 and 5.859, or alcohol abuse by a covered person in accordance with section

7

5.860. If necessary, criminal records can be obtained for lease enforcement purposes under section 5.903(d)(3).
(4) Other good cause.

See: 24 C.F.R. § 247.3(a). "Material non-compliance" is:

(1) One or more substantial violations of the rental agreement;
(2) Repeated minor violations of the rental agreement that:
    (i) Disrupt the livability of the project,
    (ii) Adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities,
    (iii) Interfere with the management of the project, or
    (iv) Have an adverse financial effect on the project.

24 C.F.R. 247.3(c). As other courts have noted, whether a breach is material is a question of fact.

> A breach is material when it "is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages." *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728 (Minn. App. 2011) (quotation omitted), *rev. granted* (Minn. June 14, 2011) *and appeal dismissed* (Minn. Aug. 12, 2011). "A material breach goes to the root or essence of the contract." *Id.* (quotation omitted). A landlord must establish grounds for eviction by a preponderance of the evidence. *Nationwide Hous. Corp. v. Skoglund*, 906 N.W.2d 900, 908 (Minn. App. 2018), *rev. denied* (Minn. Mar. 28, 2018).

*515 W. Lake LLC v. Ikram Childcare Ctr. LLC*, 2025 WL 958910, at *4 (Minn. Ct. App. Mar. 31, 2025). See also *Hous. & Redevelopment Auth. of St. Cloud v. Tesfaye*, 2010 WL 1753271, at *4 (Minn. Ct. App. May 4, 2010) ("A breach is material when one of the primary purposes of a contract is violated").

Plaintiff had specific lease conditions regarding pets and animals and regarding the condition of the leased unit. In early 2024 Defendant was in gross violation of these conditions and was directly responsible for those violations.[6] There were numerous – more than a dozen – cats in the residence. The conditions of the unit were foul. The animals were defecating and urinating on the floor and Defendant had strewn kitty litter around in an apparent attempt to mitigate the conditions. The odor associated with the condition of the apartment was extreme – one inspector could only remain inside the unit for a matter of minutes. The odor was clearly present in the hallway of the building and has permeated the flooring and furniture in the unit. Here the noncompliance with the pet limitation and noncompliance with the requirement to maintain the unit in a

---

[6] See n. 5, *supra*.

8

clean and sanitary condition are substantial violations and a material breach of the terms of the lease.

Defendant has exacerbated this violation by engaging in the same noncompliant conduct the following year.

Defendant violated a material term of his lease. His lease was properly terminated and yet he retains possession. Plaintiff has incurred fees and costs associated with recovering possession of the property in the amount of $ 3,786.70.[7]

      a.  The affirmative defense and counterclaim for failure to provide a reasonable accommodation

Defendant has filed an affirmative defense and counterclaim alleging Plaintiff failed to provide a reasonable accommodation.

> Under the Fair Housing Act (FHA), housing providers may not "discriminate against any person in the terms, conditions, or privileges of … rental of a dwelling … because of a handicap of any person associated with that person." 42 U.S.C. § 3604(f)(2)(C). Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Janush v. Charities Hous. Dev. Corp.*, 169 F.Supp.2d 1133, 1136 (N.D. Cal. 2000) (quotation omitted).

*Gill Terrace Ret. Apartments, Inc. v. Johnson*, 2017 VT 88, ¶ 15. Courts have characterized such claims as comprising five elements.

> To establish a reasonable accommodation defense under the Fair Housing Act, the tenant must demonstrate that (1) [the tenant] suffered from a 'handicap' (or 'disability'), (2) the landlord knew or should have known of the disability, (3) an accommodation of the disability may be necessary to afford the tenant an equal opportunity to use and enjoy [the] apartment, (4) the tenant requested a reasonable accommodation, and (5) the landlord refused to grant a reasonable accommodation.

*Lebanon Cnty. Hous. Auth. v. Landeck*, 967 A.2d 1009, 1012 (Pa. Super. Ct. 2009) (citing *Douglas v. Kriegsfeld Corporation,* 884 A.2d 1109, 1129 (D.C.2005)). See also

---

[7] To the extent that Defendant argues that the lease condition regarding costs is unenforceable, the court notes that it has found in Plaintiff's favor on the ejectment complaint and on the counterclaim and, thus, Plaintiff has prevailed. Plaintiff failed to establish that the costs allegedly associated with Defendant's prior failure to maintain the unit are, in fact, presently due and owing.

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014); *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 620–21 (6th Cir. 2011)

"A reasonable accommodation means *changing some rule that is generally applicable* to everyone so as to make its burden less onerous on the handicapped individual." *Oras v. Hous. Auth. Of City Of Bayonne*, 861 A.2d 194, 203–04 (N.J. Super. App. Div. 2004) (citing *Oxford House, Inc. v. Township of Cherry Hill,* 799 F.Supp. 450, 462, n. 25 (D.N.J. 1992) (emphasis supplied). See also *Hughes v. Bransfield*, 84 Va. Cir. 214 (Va. Cir. Ct. 2012) ("making a reasonable accommodation means taking affirmative steps to change rules or practices if such steps are necessary to allow a person with a disability an opportunity to live in the community") (cleaned up).

> The tenant initially must produce evidence sufficient for findings that the requested accommodation is reasonable and may be necessary for enjoyment of the premises equal to that experienced by tenants who are not disabled. Once the tenant produces such evidence, the burden of production shifts to the landlord to introduce evidence in rebuttal, leaving the ultimate burden of persuasion, of course, on the tenant who seeks accommodation

*Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1129 (D.C. 2005). Thus, Defendant must identify a generally applicable rule or practice from which he seeks relief by way of a reasonable accommodation, identify the requested accommodation *and* make an initial showing that it is reasonable and may be necessary. Defendant has not met his initial burden of production. First, the record is devoid of evidence as to the rule or practice that Defendant seeks relief from. Additionally, Defendant has neither clearly articulated or described the accommodation he seeks nor established that any such accommodation is reasonable or necessary.[8] This is not a case where a tenant seeks an exception from a no-pets policy to allow a single service animal. Indeed, it appears that the requested accommodations are at the core a request for dismissal of this proceeding. Defendant has not met his burden regarding his affirmative defense or his counterclaim.

**ORDER**

Judgment is entered for Plaintiff in this matter. Plaintiff shall have possession of the premises and a judgment in the amount of $ 3,786.70.[9] A writ of possession shall issue. 12 V.S.A. § 4854. Judgment is entered for Plaintiff on Defendant's counterclaim.

---

[8] Defendant faults Plaintiff for allegedly failing to engage in an interactive dialog regarding the requested reasonable accommodation. Given Defendant's failure to meet his initial burden of production the court does not reach the issue of the sufficiency of the dialog between the parties. The record does reflect that certain relief was provided – such as a requested and granted delay in the merits hearing in this matter – but, again, Defendant has not met his burden of production.
[9] This judgment is separate and apart from any rent due and owing.

Electronically signed: 1/23/2026 8:33:44 AM pursuant to V.R.E.F. 9(d)

John R. Treadwell
Superior Court Judge

As to the facts:

Carolyn Partridge
Assistant Judge

Lamont Barnett
Assistant Judge

11