Filed 11/26/24

VERMONT SUPERIOR COURT

Essex Unit
75 Courthouse Drive
Guildhall VT 05905
802-676-3910
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 17-7-20 Excv

---

Doyon vs. Lemington Maple Farm, LLC et al

---

## FINDINGS, CONCLUSIONS, AND ORDER

This case arises from a long-running dispute between two brothers, Steven and Yvan Doyon, over a maple sugaring business on property in Lemington and Canaan. Plaintiff Steven Doyon filed this case individually and derivatively on behalf of Monadnock MTN VT Maple Syrup, LLC, against defendants Lemington Maple Farm, LLC, and its members Yvan and Paul Doyon, and David and Lynne Gray. Pending before the court are Steven's claims for breach of fiduciary duty (both individual and derivative), unjust enrichment, and injunctive relief concerning a shared right-of-way. The court conducted a site visit of the property on September 25 and held a bench trial on September 26 and September 30. For the reasons set forth below, the court will enter judgment in favor of defendants on all of plaintiff's claims.

### Findings of Fact

The background facts of this case have been comprehensively set forth in prior orders in this docket and a related docket in Case No. 30-6-16 Excv (*Doyon 1*). The court presumes familiarity with the underlying facts, and they are repeated below only as necessary to address the pending claims.[1]

Steven and Yvan started a maple sugaring business together in or around 2011. They acquired approximately 208 acres on Monadnock Mountain in Lemington and built a sugarhouse on the mountainside. In June 2012, Steven registered an LLC called Monadnock MTN VT Maple Syrup (Monadnock) with the Vermont Secretary State. Monadnock never had an operating agreement or any other organizing documents. Steven formed the LLC without informing Yvan but both brothers were listed as members and Yvan soon learned of and ratified the LLC's existence.

Steven lived out of state and initially handled the financial and business end of the operation while Yvan lived nearby and handled most of the on-site labor, along with others he recruited and hired. Steven would help with on-site labor when he periodically visited Vermont.

---

[1] Although the court takes judicial notice of the docket entries and orders in *Doyon 1*, the findings set forth below are based on the evidence presented at the bench trial in this case. *See Jane Doe v. Camacho*, 24 VT 72, ¶ 2 n.1 ("A court may take judicial notice of the docket entries in a separate, related case.").

The brothers planned to grow the business. In or about 2011, Steven drafted an initial business plan for the maple sugaring operation to help with obtaining financing. That plan referenced general plans to expand the "sugaring operation to maple trees on adjacent land" and potentially tapping "approximately 2,000" trees.

The brothers began sugaring in 2012. By that time, the original sugarhouse serviced tap lines running from trees on the brothers' own lot and on lots that Steven leased from Palmer Lewis, a local landowner. Neighboring lots owned by Mr. Lewis and his family as well as Paul and Constance Jackson presented additional opportunities for Monadnock to expand. But, once tapped, sap runs downhill. Thus, the brothers could only tap trees higher up the mountain from where the original sugarhouse was built. While there was some room to expand up the mountain by leasing additional lots from the Lewis family, there were greater opportunities down below and on the other side of the Willard Stream ravine. Without installing pumps, however, trees in those areas could only be serviced by building a new sugarhouse at a lower elevation.

In 2013, Steven drafted an updated business plan for Monadnock. The plan anticipated growing the business over the next decade from approximately 6,000 taps to between 25,000 to 30,000 taps. The plan specifically contemplated purchasing an approximately 30-acre lot alongside Route 102 from the Jacksons to permit construction of a new roadside sugarhouse. The plan further provided:

> Expansion would include the lease of local sugarbushes in the area for production of maple sap, which would then be hauled/trucked to the new sugarhouse located along Route 102. The current sugarhouse location is not accessible in the spring due to the grade and road conditions. New Sugarhouse location would provide the ability to increase maple syrup production, access for internet sales, direct store sales and weekend open house activities.

Pls.' Exh. 12. Between 2014 and 2018, the plan anticipated building the new sugarhouse, installing "new pipeline on leased sugarbush," and continuing "expansion into new sugarbushes." *Id.* The plan also referenced extending tap lines "into [the] 30 acre sugarbush owned by Edward Lewis bordering the most northwest corner" of the Doyon's approximately 208 acre lot. The plan otherwise did not specifically identify the lots or landowners that Monadnock planned to target for expansion.

Steven recalls sharing this business plan with Yvan but did not produce any evidence, apart from his own testimony, that Yvan ever saw the plan. Yvan claims that he never saw the plan until litigation.

In late 2013 or early 2014, the brothers purchased the 30-acre Jackson lot alongside Route 102. They then executed a "Deed of Right-of-Way" with Mr. Lewis and his wife to access their existing lot and sugarhouse from Route 102 and the newly acquired lot. The deed described the rights-of-way being granted as a "right-of-way over an existing roadway . . . for ingress and egress." Pl.'s Exh. 24. The "existing roadway" referenced in the deed is Jackson Road. According to Yvan, the purpose of acquiring the Jackson lot was to secure the right-of-way from Route 102

and increase the overall value of the sugaring operation so that the brothers could borrow money on more favorable terms.

The brothers continued to sugar for the 2014 and 2015 seasons and the business became more successful. During this period, the only efforts Steven made to pursue the expansion he contemplated in 2013 was to walk the surrounding forest and research the ownership of various nearby parcels.

As Monadnock's income grew, so did the tensions between Steven and Yvan. Initially, Steven handled all the finances, invested his own personal funds in the business and incurred much of the business's losses, which he claimed as business losses on his personal tax returns. As the company began making more money, Yvan became convinced that Steven was mishandling the company's income, including by diverting funds for his personal use, and failing to provide Yvan with a fair share of the company's profits as the parties had agreed. A tense confrontation occurred between the brothers in September 2015, in which Steven felt threatened and "verbally assaulted." The brothers' relationship never recovered.

The brothers hired an independent accountant to manage Monadnock's finances for the 2016 season. Yvan sugared that year. Steven did not return to Vermont. In June 2016, Yvan filed *Doyon 1*, individually and on behalf of Monadnock, alleging that Steven breached his duties to the company, his promises to Yvan, and had committed fraud and unjustly enriched himself. Steven asserted a counterclaim for breach of contract.

Monadnock did not operate in 2017. In February of that year, Yvan filed articles of organization with the Secretary of State's Office to form a new business called Lemington Maple Farm LLC (LMF), the initial members of which were Yvan, his wife Paula, and Rob and Laura Baumb, who were neighboring landowners. Yvan wanted to continue to sugar but was unwilling to work with Steven. Yvan created LMF to stay in business and to access grant funding from the University of Vermont.

Also in 2017, Yvan bought a 3.2-acre parcel from Mr. Lewis, which was between the 30-acre Jackson lot alongside Route 102 and the lot where the original sugarhouse was built higher up the mountain. Mr. Lewis was looking to sell the lot, which was located on the Canaan side of the Canaan/Lemington town line, for tax reasons. Mr. Lewis had known Yvan for many years, knew that he was looking to expand, and approached him with the offer. Prior to the offer, neither Yvan or Steven knew that Mr. Lewis was interested in selling the parcel. Yvan eventually built a new sugarhouse on this parcel, which he began using in 2020. This sugarhouse is easier to access from Route 102 than the original sugarhouse and can collect sap from trees lower down the mountain and across Willard Stream.

In advance of the 2018 sugaring season, the court in *Doyon 1* ordered that Yvan would lease the sugaring operation from Monadnock, be responsible for all associated operating costs, and "file and pay all taxes and fees related to operations and syrup sales as a distinct entity from [Monadnock]." Order Regarding 2018 Operating Year, *Doyon 1*, 30-6-16 Excv (Jan. 18, 2018). Yvan sugared during the 2018 season using taps on the brothers' own property and on trees that

Steven had leased from Mr. Lewis, and paid Monadnock approximately $41,000. Because Yvan had begun to operate as a "distinct entity" and Steven was not sugaring, the *Doyon 1* court concluded that Monadnock "essentially became defunct in 2018." *Doyon 1*, 30-6-16 Excv, at 4 (Feb. 23, 2021). The evidence adduced at the bench trial in this case supports that conclusion. Moreover, records from the Vermont Secretary of State indicate that Monadnock's business status was terminated in April 2018, briefly reinstated that November, and then terminated again in April 2019. The LLC remained terminated until Steven's counsel reinstated it on September 26, 2024—the day the bench trial in this case began.

Yvan sugared in 2019 through LMF, using the brothers' jointly owned property and assets. LMF's business certificate was amended in 2019 to replace Rob and Laura Baumb with David, Lynne, and Tyler Gray.

In September 2019, the court ordered Yvan to pay Steven for his share—as a co-owner of the property—of the profits from the 2019 season. The court's order expressly noted that Yvan had "started another LLC with others which did the labor" for the 2019 season. *Doyon 1*, 30-6-16 Excv, at 2 (Sep. 26, 2019). Steven, who was represented by counsel, had moved the court to order payment from Yvan and did not appeal the court's order.

In 2019 and 2020, LMF entered into several leases to tap trees on nearby lots owned by various members of the Lewis family. LMF tapped trees on the brothers' land and on the land that LMF leased. Except for the 2018 season, when Yvan was ordered to lease the Monadnock operation, Yvan has not tapped any of the tress that Steven leased. Beginning in the 2020 season, LMF started boiling at the new sugarhouse built on the parcel acquired from Mr. Lewis.

Steven had placed some taps but did not sugar during the 2020 or 2021 seasons. He suffered a heart attack in 2020 and was not able to spend much time in Vermont. Steven filed this action in July 2020, after learning that LMF was operating through new leases and a new sugarhouse. Steven recalls that the court in *Doyon 1* told him that it would not consider new claims based on the existence of LMF as part of the *Doyon 1* case, which had already been pending for several years. Steven did not move to amend his counterclaim complaint to include any claims related to LMF.

Between February and May 2021, the court in *Doyon 1* issued several orders "winding up" Monadnock by awarding Steven all the equipment used to operate the sugaring business in settlement of any claims that Steven might have against the business because of his capital contributions and cash advances. The court stated that once that issue was resolved, "the LLC is terminated." *Doyon 1*, 30-6-16 Excv, at 10 (Feb. 23, 2021). The court concluded that the brother's real estate was jointly held by them as tenants in common and not by Monadnock. The court awarded the original 208-acre lot in Lemington to Steven and the 30-acre Jackson lot in Canaan to Yvan. The court additionally concluded that Steven had breached his fiduciary duties to Monadnock and Yvan by claiming Monadnock's business losses as his own on his prior years' tax returns, and ordered that Steven pay any associated tax penalties. None of these orders were appealed.

Since the *Doyon 1* litigation concluded, Yvan has continued to sugar through LMF using his new sugarhouse and tapping trees leased by LMF.

Steven has purchased a new parcel down the mountain from the original sugarhouse and approximately 2,000 feet from Route 102. He is building a new sugarhouse on this property. In 2022, Mr. Lewis terminated his leases with Steven because they were not being used and because Mr. Lewis did not believe Steven had been a good steward of his property. Steven had left taps in trees, which can cause splitting and kill trees. Mr. Lewis has no current dealings with Steven.

The parties have an ongoing dispute concerning the right-of-way. In a July 2021 order in this action, the court granted summary judgment to Steven on his claim that the 2014 right-of-way deed between the brothers and Mr. Lewis permitted Steven to use Jackson Road to access his property from Route 102. That order, however, did not resolve the dispute. Yvan's property (the former Jackson lot) includes a narrow strip between Jackson Road and Steven's new property. Steven would like to cross from Jackson Road to his land at any point along that strip, whereas Yvan believes the right-of-way only permits Steven to travel the whole length of Jackson—approximately 2,000 feet—before crossing to his property. Yvan has placed boulders and barbed wire to prevent Steven from crossing at other areas along Jackson Road.

## Conclusions of Law

### 1. Breach of fiduciary duty

"Generally, to establish a claim for breach of a fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary duty, (2) knowing breach of that duty, and (3) damages from that breach." *Mylan Technologies, Inc. v. Zydus Noveltech, Inc.*, No. 41-1-09 CNC, 2015 WL 3935320, at \*12 (Vt. Super. Ct. Apr. 07, 2015) (Toor, J.) (citing *Johnson v. Nextel Communications, Inc.*, 660 F. 3d 131, 138 (2d Cir. 2011)).

Under Vermont law, the duties an LLC member owes to the company and other members are set forth in statute:

> (a) The only fiduciary duties a member owes to a member-managed limited liability company and its other members are the duty of loyalty and the duty of care imposed by subsections (b) and (c) of this section.
>
> (b) A member's duty of loyalty to a member-managed limited liability company and its other members is limited to the following:
>
> > (1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of the company's opportunity;
> >
> > (2) to refrain from dealing with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and

Order
17-7-20 Excv Doyon vs. Lemington Maple Farm, LLC et al

Page **5** of **8**

> (3)    to refrain from competing with the company in the conduct of the company's business before the dissolution of the company.
>
> (c)    A member's duty of care to a member-managed limited liability company and its other members in the conduct of and winding up of the company's business is limited to refrain from engaging in grossly negligent or reckless conduct, or a knowing violation of the law.

11 V.S.A. § 4059.

Steven argues that Yvan, as a member of Monadnock, owed both him and Monadnock fiduciary duties of loyalty and care, as set forth above, and that Yvan breached these duties by forming LMF, purchasing the 3.2-acre parcel from Mr. Lewis, building a new sugarhouse on that parcel, and entering into leases to tap trees on adjoining land. In other words, Steven claims that Yvan breached his fiduciary duties by forming LMF to compete with Monadnock and to take advantage of business opportunities that should have belonged to Monadnock.

Steven's fiduciary duty claims fail because Monadnock did not conduct any business after the 2016 season, except for the 2018 season when the *Doyon 1* court ordered Yvan to operate as a separate entity and lease Monadnock's sugaring operation. Monadnock did not operate in 2017, became defunct in 2018, and was legally terminated from 2019 through 2024. Yvan only formed LMF after the brothers stopped working together and Monadnock failed to operate for the 2017 season. Thereafter, Mr. Lewis approached Yvan directly with the offer to sell his 3.2 acre lot in Canaan, which was never contemplated in any of Steven's business plans for Monadnock. LMF then pursued new tap leases with the Lewis family, which Steven or Monadnock had not taken any concrete actions to pursue.

In sum, Yvan did not appropriate any of Monadnock's opportunities, did not act adversely to the company, and did not compete with the company in the conduct of its business. Put simply, there was no functioning business after 2017 with which Yvan or LMF could compete. And even if the court construes the period between when *Doyon 1* was filed in 2016 and when that litigation ended in 2021 as a "winding up" period, the evidence does not show that Yvan engaged in reckless, grossly negligent, or unlawful conduct that could be considered a breach of fiduciary duty under those circumstances. *See* 11 V.S.A. § 4059(c). While Yvan actively pursued his own interests during this time, he did not breach any fiduciary duties to Steven or Monadnock by so doing. *See* 11 V.S.A. § 4059(e) ("A member of a member-managed limited liability company does not violate a duty or obligation under this chapter or under the operating agreement merely because the member's conduct furthers the member's own interest.").

## 2. Unjust enrichment

To prove an unjust enrichment claim, a plaintiff must establish that a benefit was conferred on defendant, that defendant accepted the benefit, and that allowing defendant retain the benefit without compensating plaintiff would be inequitable. *McLaren v. Gabel*, 2020 VT 8, ¶ 25, 211 Vt. 591. Unjust enrichment "rests on the principle that one should not be allowed to enrich himself unjustly at the expense of another." *Shattuck v. Peck*, 2013 VT 1, ¶ 11, 193 Vt. 123 (quotation omitted). "The inquiry is whether, in light of the totality of circumstances, it is against

equity and good conscience to allow a party to retain what is sought to be recovered." *Id.* (cleaned up).

The court cannot conclude that Yvan, LMF, or any of the other defendants were unjustly enriched. Plaintiff had not proven that Yvan ever saw his 2013 business plan for Monadnock. But even if Yvan knew of the plan, he did not unfairly pursue that it through LMF. The brothers lost trust in each other and parted ways. The partnership ended. Yvan then pursued his own business. He initially did so pursuant to court orders that Steven was aware of, requested, and did not appeal. Yvan then accepted an unexpected offer presented to him individually by Mr. Lewis to buy a small plot of land and build a new sugarhouse. While this permitted LMF to access more trees than were available from the original sugarhouse, this was not the roadside sugarhouse that Steven envisioned in 2013 to haul and truck in sap harvested from local sugarbushes in the area and provide "access for internet sales, direct store sales and weekend open house activities." Pl.'s Exh. 12.

The totality of the circumstances show that LMF pursued its own business opportunities after the partnership between Yvan and Steven failed. The court finds no unjust enrichment.

### 3. Injunctive relief regarding the right-of-way

Finally, the court declines to award Steven injunctive relief concerning the right-of-way. The 2014 deed granting the right-of-way describes it as being a "right-of-way over an existing roadway . . . for ingress and egress." Pl.'s Exh. 24. The plain language of the deed is unambiguous and provides the owner of the granted easement—here, Steven—with a limited right to travel the existing roadway—Jackson Road—to enter and leave his property. It provides nothing more. Nothing in the language of the deed suggests that it conveys a right to depart the existing roadway at any point and cross unconveyed land for quicker access, and the Vermont Supreme Court has strongly cautioned against expansively interpreting the terms "ingress and egress" in a right-of-way to allow greater intrusions than what is expressly conveyed by the deed. *See Gladchun v. Eramo*, 2023 VT 5, ¶¶ 13-21 (noting such an interpretation would be inconsistent with Vermont's "robust commitment to private-property ownership" and the Supreme Court's "longstanding rules of deed interpretation").

### Order

For the reasons set forth above, the court will enter judgment in favor of defendants on plaintiff's claims for breach of fiduciary duty, unjust enrichment, and injunctive relief.

Electronically signed on: 11/26/2024 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed on: 11/26/2024 pursuant to V.R.E.F. 9(d)

_Evan Hammond_

Hon. Evan Hammond
Assistant Judge


Electronically signed on: 11/26/2024 pursuant to V.R.E.F. 9(d)

_KE Stransky_

Hon. Kenn Stransky
Assistant Judge